WILLIAM J. MATTHEWS v. SHAMROCK VAN LINES, INC.

(Filed 18 June, 1965.)

**1. Reformation of Instruments § 4— Answer held to allege affirmative defense for reformation for mutual mistake.**

In lessor's action for compensation for the use of equipment as set out in a written lease, defendant alleged that prior to the execution of the lease, incorporated in the answer by reference, the parties had agreed to specified provisions for compensation which were at variance with the provisions of the lease, that the provisions for compensation as set out in the lease were included therein by mutual mistake, and that each party executed the instrument in belief that it embodied the actual agreement between them. *Held:* The answer sufficiently alleges the affirmative defense of reformation for mutual mistake, it not being required that the pleader allege facts as to how and why the mutual mistake came about.

**2. Same; Pleadings § 7—**

An answer may set forth facts stating the affirmative defense of reformation, and may also allege facts entitling defendant to recover a stated sum under another part of the written agreement not attacked, and objection that the two are inconsistent and repugnant cannot be sustained.

APPEAL by defendant from *Braswell, J.,* February 1965 Civil Session of ALAMANCE.

On May 3, 1961, plaintiff, lessor, and defendant, lessee, entered into a truck-lease agreement, whereby plaintiff leased his truck to defendant for a percentage of the revenue received from it. Plaintiff agreed to devote his services and the leased vehicle exclusively to defendant's business. Plaintiff brought this action on February 26, 1964, to recover the difference between amounts received for unpacking and wardrobe service and the amount allegedly due under the contract. Plaintiff alleges that his remuneration was to be 15% of the unpacking revenue and 100% of that from wardrobe service. He seeks to recover $3,283.02 with interest from August 2, 1963. Answering, defendant denies that it owes plaintiff any sum whatsoever and seeks to reform paragraph 3 of the truck-lease agreement, which is attached to the answer as Exhibit A. In pertinent part, as a Further Defense, defendant alleges:

1. That prior to the signing of the paper writing of May 3, 1961, that the complaint mentions the plaintiff and defendant had agreed that the plaintiff would be paid only 80 per cent for wardrobe service and was not to be paid for the unpacking, and the plaintiff understood the said provisions and the defendant understood the said provisions and the said provisions were agreed to by the parties. It was agreed between the plaintiff and defendant that the payments should be as stated above and not as set out in paragraph 3 of the complaint.

2. That by mutual mistake of the plaintiff and the defendant, the provision for 100 per cent for wardrobe service and 15 per cent for unpacking was included in the paper writing by mutual mistake and it did not express the true agreement.

3. That the paper writing was executed in the belief by the plaintiff and defendant that the same embodied the actual agreement theretofore made as hereinabove alleged (and defendant did not learn of the mistake until after the bringing of this suit.)

4. By reason of the mutual mistake the defendant is entitled to have the said paper writing corrected to set forth the true agreement between the parties.

\* \* \*

6. That paragraph 20 of the paper writing which plaintiff refers to in paragraph 3 of the complaint provides that Lessee (the defendant) would advance to Lessor (the plaintiff) 25 per cent of the line-haul revenue of each shipment upon request by Lessor; and that if Lessee advanced an amount in excess of 25 per cent on request of Lessor, that Lessor agreed that the remuneration due him on all shipments handled that particular month should be reduced from 50 per cent to 47 per cent. That Lessor did request and Lessee did advance more than 25 per cent of the line-haul agreement for one or more shipments for 25 months during the time complained of by plaintiff and Lessee is entitled to have the total compensation for the line-haul revenue reduced by 3% for all of said months, which reduction amounts to Sixteen Hundred Fifty-Seven Dollars and fifty-four cents.

Plaintiff moved to strike from the Further Defense paragraphs 1 and 2; that portion of paragraph 3 in parentheses; and paragraphs 4 and 6. The judge, being of the opinion that defendant had not sufficiently alleged mutual mistake, entered an order allowing the motion, which he treated as a demurrer to the Further Defense. From this order defendant appeals.

*John D. Xanthos for plaintiff appellee.*
*Allen & Allen for defendant appellant.*

SHARP, J. For reformation of the contract in suit defendant relies upon an allegation of a mistake common to both parties. It makes no attempt to allege fraud or circumstances of imposition. Plaintiff contends, and his Honor held, that defendant has not averred sufficient facts for the court to "determine the source of the alleged mutual mis-

take of fact." The facts alleged as a defense must be set out in an answer with the same precision required in a complaint, *Anderson v. Logan,* 105 N.C. 266, 11 S.E. 361, and, if defendant has not alleged a cause for reformation for mutual mistake as required by our decisions, the court cannot grant relief. *McNeill v. Thomas,* 203 N.C. 219, 165 S.E. 712; *Webb v. Borden,* 145 N.C. 188, 58 S.E. 1083.

The encyclopedias lay down strict rules as to what must be alleged to secure the reformation of an instrument for mutual mistake.

> "In a suit to reform a written instrument, it should appear from the allegations in the pleading what the real agreement was, what the agreement as reduced to writing was, and wherein the writing fails to embody the real agreement, as by showing what part of the real agreement was not reduced to writing or what part of the agreement as written was not embraced in the real agreement. Thus, one who seeks the reformation of an instrument should set it forth in his pleading, or attach it to the pleading as an exhibit, or file a copy of it with the pleading, so that from the instrument and the allegations it may clearly appear that the instrument does not conform to the real agreement made by the parties, and it must be alleged that the parties agreed to the terms of the instrument as sought to be established, and that the agreement sought to be established as the real agreement was made before the writing was signed." 76 C.J.S., Reformation of Instruments § 73 (1952).

> "A mistake, in order to authorize the reformation of an instrument, should be pleaded clearly, specifically, with particularity, and with precision, and should be distinctly charged, the particular mistake being set forth, and *how the mistake occurred,* when the mistake occurred, and *why it occurred.* The particular facts or circumstances constituting the mistake must be pleaded; a mere allegation that a mistake was made, without allegation of facts tending to show it, is insufficient. However, the use of the word 'mistake' has been held not necessary, and it is sufficient if the facts alleged, or the inference to be drawn from them, by fair intendment shows mistake. Likewise it has been held that, although a pleading for reformation is not in the accurate and technical form which is desirable, it is sufficient if the question whether there was a mistake is substantially presented, so that it cannot be misapprehended." 76 C.J.S., Reformation of Instruments § 74b (1952). (Italics ours.) *Accord,* 45 Am. Jur., Reformation of Instruments § 100 (1943); 28 L.R.A. (N.S.) 913.

It may be doubted that all the cases cited as authority for the above proposition that the pleader must allege how and why the mistake oc-

curred go that far. The rule in North Carolina, in any event, has never been stated or applied with such strictness as to detail when the gravamen of the complaint is mutual mistake. The rule with us is stated in *Crawford v. Willoughby*, 192 N.C. 269, 271, 134 S.E. 494, 495, and quoted in *Smith v. Smith*, 249 N.C. 669, 674, 107 S.E. 2d 530, 533:

> "The party asking for relief by reformation of a deed or written instrument, must allege and prove, first, that a material stipulation, as alleged, was agreed upon by the parties, to be incorporated in the deed or instrument as written, and second, that such stipulation was omitted from the deed or instrument as written, by mistake, either of both parties, or of one party, induced by the fraud of the other, or by the mistake of the draughtsman. Equity will give relief by reformation only when a mistake has been made, and the deed or written instrument because of the mistake does not express the true intent of both parties. The mistake of one party to the deed, or instrument, alone, not induced by the fraud of the other, affords no ground for relief by reformation."

When the pleader has alleged (1) the terms of an oral agreement made between the parties; (2) their subsequent adoption of a written instrument intended by both to incorporate the terms of the oral agreement but differing materially from it; and (3) their mutual but mistaken belief that the writing contained their true, *i.e.*, the oral, agreement, our cases hold that the pleading will survive a demurrer. *McCallum v. Insurance Co.*, 259 N.C. 573, 131 S.E. 2d 435; *Case v. Arnold*, 215 N.C. 593, 2 S.E. 2d 694; *Alexander v. Bank*, 201 N.C. 449, 160 S.E. 460; *Strickland v. Shearon*, 191 N.C. 560, 132 S.E. 462; *McLamb v. McPhail*, 126 N.C. 218, 35 S.E. 426.

A mere allegation that plaintiff's name was inserted in the instrument sought to be reformed "through error," however, is insufficient, *Smith v. Smith, supra,* to comply with our rule that "mistake as a ground for relief should be alleged with certainty, by stating the facts showing the mistake — either a mutual mistake of the parties or a unilateral mistake with circumstances of imposition." 1 McIntosh, North Carolina Practice and Procedure § 990 (2d Ed. 1956). If there has been uncertainty in our cases on this question, 15 N.C.L. Rev. 154, 160, it no doubt arose because the one end, reformation, can be had either for fraud or for mutual mistake, two distinct gravamina.

We think a requirement that a pleader allege facts as to *how* and *why* a mutual mistake came about is demanding too much. The following hypothetical case from *Wolz v. Venard*, 253 Mo. 67, 83, 161 S.W. 760, 764, illustrates the point. If "*A* (pleader) alleges that *A* agreed to sell to *B* and *B* agreed to buy from *A* a tract of land *X*; that in pur-

suance of that pact *A* attempted to convey *X* to *B*, but by mistake inserted *Y* in the deed, thinking it was *X*, and *B*, by mistake, thinking *Y* was *X*, accepted the deed, and paid the purchase money," nothing else appearing, what matters it how the mistake occurred? In such a situation does common sense or fairness to *B* require *A* to allege how and why the mistake occurred? *A* may not know how it occurred — only that it did occur. So far as he is concerned, it was "just one of those things." Perhaps the mistake was occasioned by an error of the draftsman, but such an allegation "may be viewed as merely supplementary to the mutual mistake" of the parties to the instrument, *Ibid.* In other words, if both parties have actually done what neither intended, the cause of the failure of the written instrument "to express the real agreement between the parties is, in the absence of fraud, not material." *United States v. Hudson,* 269 Fed. 379, 381 (C.C.A., 8th).

The Supreme Judicial Court of Massachusetts in *De Vincent Ford Sales v. First Mass. Corp.,* 336 Mass. 448, 451, 146 N.E. 2d 492, 494, has expressed our views on this question:

> "We think that grounds for equitable relief are here sufficiently set forth by the allegations (1) that the parties intended to include the omitted provision; (2) stating the substance of the omitted provision; (3) stating the provision of the executed lease; and (4) that the omission was by mistake (that is, human failure of performance) of the parties and 'without intention or design' * * * The situation is unlike that which would be presented by an allegation that performance by the plaintiff had been obtained by 'duress' or by 'fraud,' each of which would plainly be inadequate to state a cause of action in the absence of detailed statements of the facts constituting the duress or the fraud. Duress or fraud, in a very real sense, (is a conclusion) . . . of law from other facts; but *mistake, in the omission from a document of a provision intended to be included, is a fact in itself.*
>
> "Doubtless, where practicable, more detailed allegations of the manner in which the mistake occurred as, for example, by the failure of a scrivener to understand and carry out instructions, ought to be made. . . . The allegations in the present case, however, seem sufficient to be good against demurrer and adequately to inform the defendant of the mistake which is alleged to have taken place and the basic facts with respect to it." (Italics ours; citations omitted.)

Attached to defendant's answer in this case and incorporated by reference is a copy of the instrument which was actually executed by the

parties. The paragraphs or parts thereof which were struck from the Further Defense set out the schedule of compensation which defendant alleges was agreed to by the parties and intended to be incorporated in the written lease; defendant specifically states the material differences between the two schedules and positively alleges that the differences were the result of the mutual mistake of the parties. In paragraph 7 (not set out herein), defendant further avers that plaintiff worked under the oral agreement between them; that he received statements and accepted checks based upon it; and that it learned of the mistake in the written contract only after he brought this action.

If defendant can establish the allegations in paragraphs 1, 2, 3, and 4 of its Further Defense by evidence clear, strong, and convincing, *Isley v. Brown*, 253 N.C. 791, 117 S.E. 2d 821, it will be entitled to the reformation it seeks. These allegations were improperly struck, as was, also, paragraph 6, which relates to paragraph 20 of the lease. Defendant does not seek to reform paragraph 20. Even had these portions of the Further Defense been properly struck, defendant would have been entitled to prove the facts alleged in paragraph 6 as a set-off to plaintiff's claim. The reasoning in plaintiff's contention that paragraph 6 "is inconsistent, repugnant with other allegations of the defendant and therefore . . . neutralized" is inapparent to us. The claim for set-off has to do with a part of the contract unrelated to those parts which defendant seeks to reform.

The order of the court below allowing plaintiff's motion to strike paragraphs 1 and 2; part of paragraph 3; and paragraph 4 and 6 of defendant's Further Defense is

Reversed.