DONNIE C. WIGGS, DONNIE F. WIGGS, AND KENNETH R. PARNELL, PLAINTIFFS v.
GWENDOLYN HILL PEEDIN, DEFENDANT

No. COA08-578

(Filed 16 December 2008)

**1. Appeal and Error— appealability—grant of summary judgment—interlocutory order—Rule 54 certification**

Plaintiffs' appeal from the trial court's grant of summary judgment in favor of defendant ordering plaintiffs' claims to be dismissed but stating it was not a final judgment regarding defendant's counterclaims was an appeal from an interlocutory order entitled to immediate appellate review because: (1) the trial court certified the appeal for immediate review under N.C.G.S. § 1A-1, Rule 54; and (2) even though the Court of Appeals is not bound by the trial court's certification, in its discretion it decided to review the interlocutory order since there was no just reason for delay and in order to avoid piecemeal litigation.

**2. Partnerships— summary judgment—imputed partnership—partnership by estoppel—agency theory of apparent authority**

The trial court erred by granting summary judgment in favor of defendant on the issue of a partnership between plaintiffs and defendant for the purpose of operating a commercial hog farm, and the case is remanded for further proceedings not inconsistent with this opinion because: (1) substantial evidence tended to establish a partnership existed between plaintiffs and defendant's deceased husband Peedin based upon the proposed terms contained in the document Peedin drafted and signed, and the parties' subsequent compliance with these terms; and (2) although the general rule is that partnerships dissolve upon the death of any partner unless expressed otherwise in the partnership agreement, the evidence in the light most favorable to plaintiffs revealed that there was a genuine issue of material fact whether the partnership may be imputed to defendant under the legal principle of partnership by estoppel or the agency theory of apparent authority, including evidence in the pertinent document of intent for the business relationship with plaintiffs to continue in the event of Peedin's death and the fact that from 1999 to 2004, plaintiffs continued to perform their obligations under the 1995 agreement and defendant also reaped the benefits of this continued arrangement for the five years after Peedin's death.

Appeal by plaintiffs from order entered 10 December 2007 by Judge Jack W. Jenkins in Wayne County Superior Court. Heard in the Court of Appeals 23 October 2008.

*Glenn A. Barfield, for plaintiff-appellants.*

*H. Jack Edwards and Burrows & Hall, by Richard L. Burrows, for defendant-appellee.*

TYSON, Judge.

Donnie C. Wiggs, Donnie F. Wiggs, and Kenneth R. Parnell (collectively, "plaintiffs") appeal order entered granting Gwendolyn Hill Peedin's ("defendant") motion for summary judgment. We reverse and remand.

## I. Background

On 22 July 2004, plaintiffs filed a complaint against defendant and alleged: in approximately 1995 defendant and defendant's deceased husband, Donnie Peedin ("Peedin"), formed and entered into an oral partnership with plaintiffs for the development and use of a certain tract of land located in Wayne County for the purpose of operating a commercial hog farm. Peedin reduced the proposed terms of the partnership into a handwritten and signed document and delivered it to plaintiffs.

Plaintiffs agreed to contribute their collective knowledge, experience and labor to the partnership and Peedin agreed to contribute the property and secure financing for the hog farm. The property upon which the hog farm was to be developed was owned by defendant and Peedin as tenants by the entirety, per deed recorded in Book 1219, Page 644 of the Wayne County Registry. Peedin and defendant used this property as collateral to obtain a loan in order to develop and begin operation of the hog farm. Both Peedin and defendant signed the documents establishing the debt, which encumbered their property.

The terms contained in Peedin's document provided that after ten years of operation if the debt had been repaid, each plaintiff would acquire a ten percent interest in the profits, surplus, and assets of the partnership, while defendant and her husband were to own the remaining sixty percent. Each plaintiff's interest was defined as "1 hog house each and approx. 10 acres [of] land."

On 16 May 1999, Peedin died of a brain tumor and leukemia. Defendant became the sole record owner of the subject property.

Plaintiffs allege the partnership did not dissolve upon Peedin's death and his continuing partnership interest passed to defendant by will or intestate succession. On 18 June 2004, over five years after Peedin's death, defendant barred plaintiffs from entering the property "to carry out their duties under the partnership agreement[.]" Plaintiffs further alleged defendant had misappropriated funds and failed to account for the profits and surplus of the partnership.

Plaintiffs requested the trial court: (1) declare the existence and dissolution of a partnership between plaintiffs and defendant; (2) enjoin defendant from acting further on behalf of the partnership or taking any action to impair the partnership assets; (3) enter an order directing the winding up of the partnership affairs and distribution of the partnership assets; (4) order the real estate be sold as a part of the winding up or partition and distribute it to the partners; and (5) declare an equitable lien in favor of plaintiffs against the real estate at issue. Plaintiffs also filed a Notice of Lis Pendens referencing defendant's property.

On 28 September 2004, defendant filed an answer, which denied the material allegations of the complaint and raised six defenses, "a further answer and defense," and a counterclaim. The allegations contained in defendant's answer can be summarized as follows: the property located in Wayne County passed solely to defendant upon Peedin's death. Defendant used the proceeds from the hog farming operation to make payments on the debt encumbering the property and other various expenses involved in the operation. Any net profits from the operation were retained solely by defendant.

Defendant denied that a partnership agreement existed and alleged that any interest plaintiffs might have received in the hog farm operation was not to occur before March 2005. Further, plaintiffs' alleged interests were conditioned upon the debt being fully paid and Prestage Farms, Inc. ("Prestage") being satisfied with the hog farm's operation. At the commencement of this action, neither of these conditions had been satisfied. Defendant further alleged that plaintiffs should be estopped from claiming any interest in the hog farming operation based upon their fraudulent actions involving the sale of defendant's hogs without her knowledge and retaining the funds for their personal use. Defendant's answer also contained a motion to dismiss for failure to state a claim for which relief could be granted.

On 10 May 2005, defendant filed an amended answer alleging the following additional defenses of: (1) the statute of frauds; (2) the

statute of limitations; (3) estate notice to creditors; (4) laches; (5) breach of contract; (6) impossibility of performance; and (7) defective description/void for vagueness. Defendant also asserted counterclaims for: (1) larceny/embezzlement; (2) punitive damages; and (3) "[s]lander of [t]itle and [a]ction to [r]emove [c]loud from [t]itle."

On 20 July 2007, defendant moved for summary judgment and specifically re-asserted the affirmative defenses of:

> the statute of frauds, statute of limitation, and alternatively, in the event a partnership is established, a material breach of the plaintiffs' fiduciary duties to the defendant and/or partnership, by stealing pigs from the farm valued in excess of $100,000.00, and failure to perform their duties to the point of jeapordizing [sic] the grower contract between Peedin and Prestage Farms.

On 10 December 2007, the trial court entered an order granting defendant's motion and ordering plaintiffs' claims be dismissed with prejudice. The trial court stated its order was not a final judgment regarding defendant's counterclaims. Plaintiffs appeal.

## II. Interlocutory Nature of the Appeal

[1] Plaintiffs' appeal is interlocutory. *See Carriker v. Carriker*, 350 N.C. 71, 73, 511 S.E.2d 2, 4 ("Interlocutory orders are those made during the pendency of an action which do not dispose of the case, but instead leave it for further action by the trial court in order to settle and determine the entire controversy." (Citation omitted)), *reh'g denied*, 350 N.C. 385, 536 S.E.2d 70 (1999). An interlocutory order is immediately appealable in only two instances: (1) if the trial court certifies that there is no just reason to delay the appeal pursuant to N.C. Gen. Stat. § 1A-1, Rule 54(b) or (2) when the challenged order affects a substantial right the appellant would lose without immediate review. *Embler v. Embler*, 143 N.C. App. 162, 164, 545 S.E.2d 259, 261 (2001).

Here, the trial court certified plaintiffs' appeal as immediately appealable pursuant to Rule 54(b) of the North Carolina Rules of Civil Procedure. Even though this Court is not bound by the trial court's certification, in our discretion we review this interlocutory appeal because there is no just reason for delay and our review will avoid piece-meal litigation. *See First Atl. Mgmt. Corp. v. Dunlea Realty Co.*, 131 N.C. App. 242, 247, 507 S.E.2d 56, 60 (1998) ("[T]he trial court's determination that there is no just reason to delay the appeal, while accorded great deference, cannot bind the appellate courts

because ruling on the interlocutory nature of appeals is properly a matter for the appellate division, not the trial court." (Citations and quotation omitted)). We address the merits of plaintiffs' appeal.

## III. Issue

**[2]** Plaintiffs argue the trial court erred by granting defendant's motion for summary judgment because a genuine issue of material fact exists regarding whether there was a partnership between plaintiffs and defendant.

## IV. Summary Judgment

### A. Standard of Review

Summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law. The party moving for summary judgment ultimately has the burden of establishing the lack of any triable issue of fact.

A defendant may show entitlement to summary judgment by (1) proving that an essential element of the plaintiff's case is non-existent, or (2) showing through discovery that the plaintiff cannot produce evidence to support an essential element of his or her claim, or (3) showing that the plaintiff cannot surmount an affirmative defense. Summary judgment is not appropriate where matters of credibility and determining the weight of the evidence exist.

Once the party seeking summary judgment makes the required showing, the burden shifts to the nonmoving party to produce a forecast of evidence demonstrating specific facts, as opposed to allegations, showing that he can at least establish a *prima facie* case at trial.

We review an order allowing summary judgment *de novo*. If the granting of summary judgment can be sustained on any grounds, it should be affirmed on appeal.

*Wilkins v. Safran*, 185 N.C. App. 668, 671-72, 649 S.E.2d 658, 661 (2007) (internal citations and quotations omitted).

### B. Analysis

We must initially decide whether a valid partnership existed between plaintiffs and Peedin. The Uniform Partnership Act as

adopted in North Carolina statutorily defines a partnership as "an association of two or more persons to carry on as co-owners a business for profit." N.C. Gen. Stat. § 59-36(a) (2003); *see also Zickgraf Hardwood Co. v. Seay*, 60 N.C. App. 128, 133, 298 S.E.2d 208, 211 (1982) ("A partnership is a combination of two or more persons of their property, effects, labor, or skill in a common business or venture, under an agreement to share the profits or losses in equal or specified proportions, and constituting each member an agent of the others in matters appertaining to the partnership and within the scope of its business." (Citation omitted)).

It is well-established that an express agreement is not required to prove the existence of a partnership. *Wike v. Wike*, 115 N.C. App. 139, 141, 445 S.E.2d 406, 407 (1994). Our Supreme Court has stated:

A contract, express or implied, is essential to the formation of a partnership. . . . *Partnership is a legal concept but the determination of the existence or not of a partnership . . . involves inferences drawn from an analysis of all the circumstances attendant on its creation and operation[.]*

Not only may a partnership be formed orally, but it may be created by the agreement or conduct of the parties, either express or implied . . . . *A voluntary association of partners may be shown without proving an express agreement to form a partnership*; and a finding of its existence may be based upon a rational consideration of the acts and declarations of the parties, warranting the inference that the parties understood that they were partners and acted as such.

*Eggleston v. Eggleston*, 228 N.C. 668, 674, 47 S.E.2d 243, 247 (1948) (internal citations and quotations omitted) (emphasis supplied). N.C. Gen. Stat. § 59-37 sets forth the statutory rules to be used to determine whether a partnership exists. North Carolina appellate courts "have clearly held that co-ownership and sharing of any actual profits are indispensable requisites for a partnership." *Wilder v. Hobson*, 101 N.C. App. 199, 202, 398 S.E.2d 625, 627 (1990) (citing *Sturm v. Goss*, 90 N.C. App. 326, 368 S.E.2d 399 (1988)).

Evidence presented at the summary judgment hearing tended to show: in approximately 1995 Peedin sent a handwritten and signed document to plaintiffs proposing that they enter into a business relationship regarding the development and operation of a commercial

hog farm. Peedin's document set forth in detail the proposed terms of this business relationship: Peedin would receive the first nine dollars and Jamie Wiggs would receive one dollar for each hog sold. Any profit over ten dollars would be used to defray operational expenses including "labor, fencing, cows, irrigation equip, etc." If Prestage, the company purchasing the hogs from the farm, became "unhappy" with this operation and withdrew its contract, this agreement would be cancelled.

If Prestage was "pleased" with this operation, plaintiffs would "each be deeded 10% of [the hog farm] operation if [the] venture [was] paid for—1 hog house each and approx. 10 acres [of] land" in March 2005. Peedin's document also stated the "shareholders" had the right to first refusal to purchase the shares of other shareholders. Additionally, if both Peedin and defendant died before March of 2005, their surviving children would equally divide their sixty percent interest in the partnership. Plaintiffs allege that "[t]he written proposal was augmented by additional oral discussions, and the Plaintiffs accepted the substance of the proposal[.]"

It is undisputed that from 1995 to 2004, Jamie Wiggs managed the farm and the remaining plaintiffs worked one weekend a month to comply with their obligations under the agreement. Based upon the proposed terms contained in the document Peedin drafted and signed and the parties' subsequent compliance with these terms, we hold substantial evidence tends to establish a partnership existed between plaintiffs and Peedin. We must now decide whether the partnership may be imputed to defendant under the legal principle of partnership by estoppel or the agency theory of apparent authority.

As a general rule partnerships dissolve upon the death of any partner, unless expressed otherwise in the partnership agreement. N.C. Gen. Stat. § 59-61(4) (2003). Here, Peedin proposed that his and defendant's partnership interest be passed to their surviving children if both of them died prior to March 2005. Although *both* Peedin and defendant did not die before March 2005, this provision shows an intent for the business relationship with plaintiffs to continue in the event of Peedin's death. This intent is also evidenced by the provision in the document which states their children "will not be allowed to break this agreement." Presumably, upon Peedin's death, the benefits and burdens of his interest in the partnership passed to defendant.

### i.  Partnership by Estoppel

North Carolina recognizes partnership by estoppel. *See* N.C. Gen. Stat. § 59-34(b) (2003) ("The law of estoppel shall apply under this Act."); N.C. Gen. Stat. § 59-46 (2003) (setting forth the conditions of liability against a partner by estoppel); *see also Volkman v. DP Associates*, 48 N.C. App. 155, 268 S.E.2d 265 (1980) (holding summary judgment was improper where the claimants may have been able to show that the alleged partners should have been liable as a partner by estoppel or under the agency theory of apparent authority).

> The essentials of equitable estoppel or estoppel *in pais* are a representation, either by words or conduct, made to another, who reasonably believing the representation to be true, relies upon it, with the result that he changes his position to his detriment. It is essential that the party estopped shall have made a representation by words or acts and that someone shall have acted on the faith of this representation in such a way that he cannot without damage withdraw from the transaction.

*DP Associates*, 48 N.C. App. at 158, 268 S.E.2d at 267 (internal citation and quotation omitted) (alteration omitted).

### ii.  Apparent Authority

In addition to the legal principle of partnership by estoppel, defendant may also be bound to the partnership under the agency theory of apparent authority. *Id.* at 159, 268 S.E.2d at 268. This Court has stated:

> There is virtually no difference between estoppel and apparent authority. Both depend on reliance by a third person on a communication from the principal to the extent that the difference may be merely semantic. Despite its title, "Partner by Estoppel," [N.C. Gen. Stat. §] 59-46 "provides for a form of liability more akin to that of apparent authority than to estoppel." Painter, *Partnership by Estoppel*, 16 Vand. L.J. 327, 347 (1963). If this view is taken, the liability of the person seeking to deny partner status is not based on estoppel to deny agency or authority but on the objective theory of contract law, i.e., a person should be bound by his words and conduct.

*Id.*

Here, a partnership may have resulted from either: (1) defendant's spoken words or (2) plaintiff and defendant's continued conduct

after Peedin's death. *Id.* Deposition testimony in the record tends to show defendant made several oral representations to Donnie C. Wiggs ("Wiggs") indicating that after Peedin's death the operation of the hog farm "would go just like it was." Wiggs acknowledged that no further written agreement was ever formulated, but alleged defendant had represented that she would produce another agreement and that "everything would be just like [Peedin] had drew [sic] the agreement up."

Although defendant denies that she had knowledge of the exact terms of the agreement between Peedin and plaintiffs, her deposition testimony indicates that she was fully aware there was some sort of arrangement for plaintiffs to work for the hog farm operation. Defendant denied speaking to or having meetings with any of the plaintiffs after Peedin's death regarding the operation of the hog farm.

However, it is undisputed that from 1999 to 2004, plaintiffs continued to perform their obligations under the 1995 agreement. Defendant specifically testified that "from [1999] through 2004, . . . the arrangement did not change in terms of [plaintiffs'] involvement with the farm and [defendant's] involvement in the farm." Defendant also reaped the benefits of this continued arrangement for the five years after Peedin's death. The record shows that from 2001 to 2004, the hog farm operation was generating a net cash flow between $150,000.00 and $200,000.00 per year.

Viewing the evidence in the light most favorable to plaintiffs, a genuine issue of material fact exists regarding whether defendant should be held to be a partner by estoppel or is liable under the theory of apparent authority. *Id.* at 160, 268 S.E.2d at 268; *see also Howerton v. Arai Helmet, Ltd.*, 358 N.C. 440, 467, 597 S.E.2d 674, 692 (2004) ("In a motion for summary judgment, the evidence presented . . . must be viewed in a light most favorable to the non-moving party."). The trial court's order granting defendant's motion for summary judgment is reversed.

## V. Conclusion

Viewing the evidence submitted to the trial court in the light most favorable to plaintiffs, a genuine issue of material fact exists regarding whether a partnership was established between plaintiffs and defendant based upon the legal principles of partnership by estoppel or apparent authority. *DP Associates*, 48 N.C. App. at 160, 268 S.E.2d

CORNETT v. WATAUGA SURGICAL GRP.

[194 N.C. App. 490 (2008)]

at 268. The trial court's grant of summary judgment in favor of defendant is reversed.

None of defendant's counterclaims are before us and we express no opinion on the merits, if any, of those claims. This case is remanded for further proceedings not inconsistent with this opinion.

Reversed and Remanded.

Judges McCULLOUGH and CALABRIA concur.