BRANCH BANKING AND TRUST COMPANY, PLAINTIFF-APPELLEE v. CHICAGO TITLE INSURANCE COMPANY; LEWIS A. THOMPSON, III; AND BANZET, THOMPSON & STYERS, PLLC, DEFENDANTS-APPELLANTS

No. COA10-196

(Filed 7 June 2011)

### 1. Reformation of Instruments— title insurance—exclusion of prior deed

The trial court did not err by granting summary judgment for BB&T on the issue of reformation of a 2003 title insurance policy where Chicago Title did not forecast a showing that BB&T and Chicago Title mutually intended to exclude a prior deed of trust from the policy and that the policy failed to express those intentions as a result of mutual mistake.

### 2. Mortgages and Deeds of Trust— subsequent deed of trust—debt not extinguished

The trial court did not err by granting summary judgment for BB&T on the issue of whether an exclusion in a 2003 title insurance policy applied to BB&T's cause of action. Chicago Title contended that no amount remained to be paid on a promissory note secured by a 2003 deed of trust because it was effectively replaced by a 2005 deed of trust on the same property. Enforcing the document as written, the debt owed on the 2003 deed of trust was renewed and extended by a new document, the 2005 deed of trust, and the 2003 debt was not extinguished.

BRANCH BANKING & TRUST CO. v. CHICAGO TITLE INS. CO.

[212 N.C. App. 456 (2011)]

### 3. Statutes of Limitation and Repose— title insurance—prior deed of trust—notice and exclusion

The trial court did not err in its determination of the statute of limitations applicable to a title insurance case where Chicago Title would not have been barred by either N.C.G.S. § 1-52(9) or N.C.G.S. § 1-15 from filing a claim for professional malpractice or negligent misrepresentation when it was notified of a prior deed of trust. Additionally, Chicago Title had issued a policy for the prior deed of trust, and, by excluding prior unrecorded liens, Chicago Title implicitly agreed to insure against liens that were recorded.

Appeal by Defendants-Appellants from order entered 29 June 2009 by Judge Lindsay R. Davis, Jr. in Superior Court, Forsyth County; order entered 3 November 2009 by Judge Richard W. Stone in Superior Court, Forsyth County; and judgment entered 3 November 2009 by Judge Richard W. Stone in Superior Court, Forsyth County. Heard in the Court of Appeals 12 October 2010.

*Bell, Davis & Pitt, P.A., by Alan M. Ruley and Bradley C. Friesen, for Plaintiff-Appellee.*

*Roberson Haworth & Reese, P.L.L.C., by Alan B. Powell and Christopher C. Finan, for Defendants-Appellants.*

McGEE, Judge.

Chicago Title Insurance Company (Chicago Title) issued a title insurance policy (the 2003 policy) to Branch Banking and Trust Company (BB&T) on 11 April 2003, insuring a deed of trust (the 2003 deed of trust) encumbering a 5.678 tract of real property in Warren County, North Carolina. The real property was acquired by Duane White Land Company, LLC (Land Company) from Eaton Ferry Marina, Inc. on 10 April 2001. The 2003 policy included two other deeds of trust as exceptions to the coverage provided to BB&T. The two exceptions listed were (1) a deed of trust in favor of two individuals, known as the "Purchase Money Deed of Trust" and (2) a deed of trust in favor of The Money Store Commercial Mortgage, Inc., known as the "Money Store Deed of Trust." The 2003 deed of trust was recorded in the Warren County Registry on 11 April 2003, by Banzet, Banzet & Thompson, PLLC (the Banzet Firm), through attorneys Lewis A. Thompson (Thompson) and Julius Banzet, III (Banzet). The firm is presently known as Banzet, Thompson & Styers, PLLC. The Banzet Firm issued a final opinion on title, effective 11 April 2003,

and submitted it to Chicago Title. Chicago Title is the only Defendant that is a party to this appeal.

A second deed of trust was executed by BB&T and Land Company on 23 March 2005 (the 2005 deed of trust), and encumbered the same real property as that described in the 2003 deed of trust. Although BB&T requested the Banzet Firm obtain title insurance from Chicago Title on the 2005 deed of trust, no title policy was issued for the 2005 deed of trust. The 2005 deed of trust settlement statement shows that $8,265.00 was allocated to Chicago Title for title charges, and that $8,180.00 was allocated to Chicago Title for title insurance premium. From the record, it appears the check to Chicago Title for title charges was subsequently voided, but that Chicago Title deposited the check for the title insurance premium, even though no title insurance policy was issued for the 2005 deed of trust.

BB&T discovered "no later than" 21 December 2005 that, on the date the 2003 Deed of Trust was executed, a third deed of trust existed. This third deed of trust was dated 6 March 1998 and was in favor of Centura Bank (the Centura deed of trust). The Centura deed of trust encumbered a portion of the 5.678 tract described in the 2003 deed of trust. That portion of real property was not explicitly mentioned in the 2003 deed of trust or in the 2003 policy. Chicago Title had issued the policy of title insurance to Centura Bank in March 1998 (the Centura policy), insuring the Centura deed of trust. However, the Centura deed of trust was not listed as an exception to the coverage under the 2003 policy. BB&T first notified Chicago Title of the additional encumbrance on 26 March 2006.

The notice provision of the 2003 policy, section 3, reads in relevant part as follows:

[BB&T] shall notify [Chicago Title] promptly in writing . . . in case knowledge shall come to [BB&T] of any claim of title or interest which is adverse to the title to the estate or interest or the lien of the insured mortgage, as insured, and which might cause loss or damage for which [Chicago Title] may be liable by virtue of this policy[.] . . . If prompt notice shall not be given to [Chicago Title], then as to [BB&T] all liability of [Chicago Title] shall terminate with regard to the matter or matters for which prompt notice is required; provided, however, that failure to notify [Chicago Title] shall in no case prejudice the rights of [BB&T] under this policy unless [Chicago Title] shall be prejudiced by the failure and then only to the extent of the prejudice.

Centura Bank initiated foreclosure on the Centura deed of trust in early 2006. This foreclosure action was later dismissed. Centura Bank initiated a second foreclosure proceeding on 14 March 2007. BB&T then filed a claim with Chicago Title on 26 March 2007 pursuant to the 2003 policy in which BB&T requested Chicago Title cover BB&T's losses related to the Centura deed of trust. BB&T's subsidiary, BB&T Collateral Service Corporation, acquired the Centura deed of trust for $464,000.00 on 26 April 2007. The pending 2007 foreclosure proceeding was then dismissed. BB&T initiated a foreclosure proceeding on the 2003 deed of trust on 15 August 2007. The real property described in the 2003 deed of trust, including the disputed tract, was sold at foreclosure for $3,263,400.00. BB&T filed an additional claim with Chicago Title to recover the $464,000.00 in damages as a result of the alleged breach of the 2003 policy. Chicago Title denied BB&T's claim for damages on 18 March 2008.

BB&T filed a complaint against Chicago Title in Forsyth County Superior Court for breach of contract and negligence on 20 March 2008. Chicago Title filed a motion to dismiss, answer and counterclaim on 30 May 2008. Chicago Title's counterclaim requested reformation of the 2003 policy on the grounds that the 2003 policy did not conform to the intent of either BB&T or Chicago Title. In the alternative, Chicago Title's counterclaim requested a declaratory judgment from the trial court that BB&T had suffered "no loss or damage" as defined in the 2003 policy. Chicago Title argued that, because no remaining balance was due on the 2003 Deed of Trust, BB&T had not suffered any loss or damage and, thus, should be denied relief under this provision of the 2003 policy.

BB&T filed a reply to the counterclaim on 30 June 2008 in which it denied that reformation would be proper because the 2003 policy accurately described the real property BB&T intended to have covered. BB&T claimed that it believed the 2003 deed of trust, and thus the 2003 policy, included the portion of real property covered by the Centura deed of trust. In its reply, BB&T also denied Chicago Title's claim that BB&T had suffered no loss or damage in relation to the Centura deed of trust. BB&T filed a motion for summary judgment on its claim for breach of contract and Chicago Title's counterclaim for reformation on 15 May 2009. Chicago Title filed a motion for summary judgment on 26 May 2009 on BB&T's claim for breach of contract and Chicago Title's counterclaim to declare that BB&T had not suffered any loss or damage.

The trial court entered an order on 29 June 2009 granting BB&T's motion for summary judgment on Chicago Title's counterclaims and defenses relating to mutual mistake and no loss or damage. The trial court determined, however, that there was sufficient evidence to go to trial on Chicago Title's defense that it was prejudiced pursuant to the terms of the 2003 policy because BB&T did not provide Chicago Title with sufficient notice of BB&T's discovery of the Centura deed of trust. At trial, the trial court ultimately found for BB&T and, in its 3 November 2009 judgment, awarded BB&T $404,000.00, prejudgment interest, and costs. Chicago Title appeals.

I.

**[1]** Chicago Title argues that the trial court erred in granting summary judgment to BB&T on the issue of reformation of the 2003 policy because an issue of material fact existed concerning the intent of the parties regarding the 2003 policy. We disagree.

" 'We review an order allowing summary judgment *de novo*. If the granting of summary judgment can be sustained on any grounds, it should be affirmed on appeal.' " *Wiggs v. Peedin,* 194 N.C. App. 481, 485, 669 S.E.2d 844, 847 (2008) (citation omitted).

" 'Reformation is a well-established equitable remedy used to reframe written instruments where, through mutual mistake or the unilateral mistake of one party induced by the fraud of the other, the written instrument fails to embody the parties' actual, original agreement.' " *Metropolitan Property and Cas. Ins. Co. v. Dillard,* 126 N.C. App. 795, 798, 487 S.E.2d 157, 159 (1997) (citation omitted). Chicago Title makes no argument that there was any fraud involved in the execution of the 2003 policy; instead its argument for reformation is based solely on its contention that there existed a mutual mistake concerning the real property the 2003 policy was intended to cover. " 'A mutual mistake is one common to both parties to a contract . . . wherein each labors under the same misconception respecting a material fact, the terms of the agreement, or the provisions of the written instrument designed to embody such agreement.' " *Id.* (citations omitted).

"When a party seeks to reform a contract due to an affirmative defense such as mutual mistake . . . the burden of proof lies with the moving party." *Smith v. First Choice Servs.,* 158 N.C. App. 244, 250, 580 S.E.2d 743, 748 (2003) (citation omitted).

[T]here is "a strong presumption in favor of the correctness of the instrument as written and executed, for it must be assumed that the parties knew what they agreed and have chosen fit and proper words to express that agreement in its entirety." This presumption is strictly applied when the terms of a deed are involved in order "to maintain the stability of titles and the security of investments." With these principles in mind, we must examine the record to determine whether [Chicago Title] proved that there was a mutual mistake of fact as to what land was [covered] . . . by "clear, cogent and convincing evidence."

*Hice v. Hi-Mil, Inc.*, 301 N.C. 647, 651, 273 S.E.2d 268, 270-71 (1981) (citations omitted).

" 'The party asking for relief by reformation of a deed or written instrument, must allege and prove, first, that a material stipulation, as alleged, was agreed upon by the parties, to be incorporated in the deed or instrument as written, and second, that such stipulation was omitted from the deed or instrument as written, by mistake, either of both parties, or of one party, induced by the fraud of the other, or by the mistake of the draughtsman. Equity will give relief by reformation only when a mistake has been made, and the deed or written instrument because of the mistake does not express the true intent of both parties. The mistake of one party to the deed, or instrument, alone, not induced by the fraud of the other, affords no ground for relief by reformation.' "

When the pleader has alleged (1) the terms of an oral agreement made between the parties; (2) their subsequent adoption of a written instrument intended by both to incorporate the terms of the oral agreement but differing materially from it; and (3) their mutual but mistaken belief that the writing contained their true, *i.e.*, the oral, agreement, our cases hold that the pleading will survive a demurrer.

*Matthews v. Van Lines*, 264 N.C. 722, 725, 142 S.E.2d 665, 668 (1965) (citations omitted).

Chicago Title fails to forecast evidence required for the remedy of reformation. Chicago Title does not allege that it had an oral agreement with BB&T that was mistakenly omitted from the 2003 policy. *Id.* Chicago Title argues that a mutual mistake by both it and BB&T led to the "inadvertent windfall of coverage" because neither party ever intended for the real property encumbered by the Centura deed

of trust to be included in the 2003 policy. BB&T argues that it was not BB&T's intention that the 2003 policy exclude the real property encumbered by the Centura deed of trust, and that BB&T and Chicago Title never agreed that the 2003 policy would exclude coverage for the real property encumbered by the Centura deed of trust.

Chicago Title cites no evidence of any oral agreement between it and BB&T that would have excluded the Centura deed of trust from the 2003 policy. It follows that, without such an agreement between the two parties, their subsequent adoption of the 2003 policy could not have "differ[ed] materially" from the oral agreement as required in order to establish mutual mistake as a basis for reformation. *Matthews*, 264 N.C. at 725, 142 S.E.2d at 668. Having failed to present evidence in support of the first element, Chicago Title necessarily fails the second and third elements. *Id.* Therefore, Chicago Title has not made the necessary showing to support reformation based upon mutual mistake. *Id.*

Even assuming *arguendo* that Chicago Title presented sufficient evidence to support its contention that BB&T intended to exclude the contested parcel from the 2003 policy, Chicago Title's own argument defeats its appeal on this issue. Chicago Title does not argue that its own intent was erroneously represented by the 2003 policy. Chicago Title alleges that when it executed the 2003 policy, its specific intent was to "insure only that interest in real property that BB&T actually intended to encumber and insure in connection with its recordation of the [2003 policy]." We believe more is required for reformation of a title insurance policy. Chicago Title needed to show that it and BB&T had a meeting of the minds as to the specific terms of the 2003 policy, and that some material part of their agreement was mistakenly omitted from the 2003 policy. In the present case, Chicago Title and BB&T needed to have orally agreed upon the specific description of the real property to be covered by the 2003 policy. A general intent on the part of Chicago Title to cover whatever real property BB&T intended to have covered is insufficient to form the basis for a reformation based upon mutual mistake. Chicago Title fails to make any argument that it and BB&T had *specifically* agreed that the contested parcel *would be excluded* from coverage by the 2003 policy. *Matthews*, 264 N.C. at 725, 142 S.E.2d at 668. There is no evidence that a " 'material stipulation . . . *agreed upon by the parties* . . . was omitted from the deed or instrument as written, by [the] mistake . . . of both parties[.]' " *Id.* (citation omitted) (emphasis added).

Viewing the evidence in the light most favorable to the party opposing summary judgment, Chicago Title "simply has not provided a factual basis to support equitable reformation of the [2003 policy]." *Carter v. Am. Ins. Co.*, 190 N.C. App. 532, 539, 661 S.E.2d 264, 270 (2008) (citation omitted). Chicago Title did not present evidence sufficient to forecast a showing that BB&T and Chicago Title had mutual intentions to exclude the Centura deed of trust from the 2003 policy and that the 2003 policy, as the result of a mutual mistake, failed to properly express those intentions. *Matthews*, 264 N.C. at 725, 142 S.E.2d at 668.

## II.

[2] Chicago Title next argues that the trial court erred in granting summary judgment in favor of BB&T by concluding that an exclusion in the 2003 policy, namely section 5—the "no loss or damage" exclusion—did not apply to BB&T's cause of action. The "no loss or damage" exclusion provision in the title insurance policy states that if BB&T is unable to show proof that it suffered an actual loss due to any fault of Chicago Title, Chicago Title's obligations to BB&T under the 2003 policy shall terminate.

Chicago Title claims that no amount remained to be paid in connection with the promissory note secured by the 2003 deed of trust, because the 2005 deed of trust, executed on the same real property described in the 2003 deed of trust, effectively replaced the 2003 deed of trust and the debts owed in connection with it. Chicago Title argues that since it did not explicitly insure the 2005 deed of trust, it was not liable for the loss or damage suffered by BB&T in connection with Chicago Title's defective/mistaken coverage of the 2003 deed of trust. We disagree.

When reviewing the provisions of an insurance contract, we employ the following "general principles of construction . . . to divine the meaning of [the] contract." *Woods v. Insurance Co.*, 295 N.C. 500, 505, 246 S.E.2d 773, 777 (1978). "The various terms of the policy are to be harmoniously construed, and if possible, every word and every provision is to be given effect." *Id.* at 506, 246 S.E.2d at 777. "[I]f the meaning of the policy is clear and only one reasonable interpretation exists, the courts must enforce the contract as written[.]" *Id.* We consider Chicago Title's argument in light of these principles of construction.

The 2003 policy states:

> The insured mortgage and assignments thereof, if any, are described as follows:

Deed of Trust from DUANE WHITE LAND COMPANY, LLC to
BB&T COLLATERAL SERVICE CORPORATION, Trustee for
BRANCH BANKING AND TRUST COMPANY, dated April 11,
2003, filed for record April 11, 2003, at 10:37 am, in Book 746,
page 298, Warren County Registry, securing $8,000,000.00.

The 2003 policy insures the 2003 deed of trust without restriction,
except for those exceptions included in the "Exclusion from
Coverage" section of the 2003 policy, none of which are relevant here.

The 2003 deed of trust contains a Statement of Purpose, which
states in part:

In this Deed of Trust reference shall be made simply to the "Note or
other Document" and such a reference is deemed to apply to
all of the instruments which evidence or describe the Debt, or
which secure its payment, and to all renewals, extensions and
modifications thereof, whether heretofore or hereafter executed,
and includes without limitation all writings described generally
and specifically on the first page of this Deed of Trust in num-
bered paragraph 2. This Deed of Trust shall secure the perform-
ance of all obligations of Grantor and of any third party to
Beneficiary which are described in this Deed of Trust, in the Note
or other Document, and such performance includes the payment
of the Debt. In this Deed of Trust the definition of "Debt"
includes: (i) the principal; (ii) all accrued interest including pos-
sible fluctuations of the interest rate if so provided in the Note or
other Document; (iii) all renewals or extensions of any obligation
under the Note or other Document (even if such renewals or
extensions are evidenced by new notes or other documents)[.]

This Court is required to give weight to every word and provision
of the insurance contract and to the documents it covers. *Woods*, 295
N.C. at 506, 246 S.E.2d at 777. We find the third subsection of the def-
inition of "Debt" to be dispositive in this case.

The 2003 deed of trust, which was incorporated into the 2003
policy, defined "Debt" to include "all renewals or extensions of any
obligation under the Note or other Document (even if such renewals
or extensions are evidenced by new notes or other documents)[.]" We
find that that the language is clear, and that only one reasonable inter-
pretation exists. *Id.* at 506, 246 S.E.2d at 777. We are, therefore, oblig-
ated to "enforce the contract as written." *Id.* We hold that the 2005
deed of trust is, for the purposes of its inclusion in the 2003 policy's

coverage of the 2003 deed of trust, an "extension[] evidenced by a new note" of the 2003 policy. Therefore, the debt owed on the 2003 deed of trust was not extinguished by the 2005 deed of trust. The debt owed on the 2003 deed of trust was, instead, renewed and extended by a new note or document—the 2005 deed of trust. The trial court did not err in granting summary judgment in favor of BB&T on this issue. This argument is without merit.

III.

**[3]** Chicago Title also contends the trial court erred in determining that N.C. Gen. Stat. § 1-52(9) was the statute of limitations that controlled claims Chicago Title may have filed against the Banzet Firm rather than N.C. Gen. Stat. § 1-15. Chicago Title further argues the trial court erred in determining that Chicago Title had failed to show it had been prejudiced by any delay on the part of BB&T in informing Chicago Title of the Centura deed of trust. We disagree.

Chicago Title argued at trial that because of BB&T's delay in informing Chicago Title of the Centura deed of trust, Chicago Title was effectively prevented from bringing a claim against the Banzet Firm for improperly issuing a final opinion on title for the 2003 deed of trust to Chicago Title that omitted the Centura deed of trust. The standard of appellate review for a decision rendered in a non-jury trial is whether there is competent evidence to support the trial court's findings of fact and whether the findings support the conclusions of law and ensuing judgment. *Sessler v. Marsh,* 144 N.C. App. 623, 628, 551 S.E.2d 160, 163 (2001) (citation omitted). If there is competent evidence to support the findings of fact, they are binding on appeal. *Id.* (citation omitted). While a trial court's findings of fact are binding if supported by sufficient evidence, a trial court's conclusions of law are reviewed *de novo. Starco, Inc. v. AMG Bonding and Ins. Services,* 124 N.C. App. 332, 336, 477 S.E.2d 211, 215 (1996) (citation omitted).

N.C. Gen. Stat. § 1-52(9) (2009) sets forth a three-year statute of limitations for claims of negligent misrepresentation. For a claim of professional malpractice, N.C. Gen. Stat. § 1-15(c) (2009) states in relevant part:

> [A] cause of action for malpractice arising out of the performance of or failure to perform professional services shall be deemed to accrue at the time of the occurrence of the last act of the defendant giving rise to the cause of action: Provided

that whenever there is . . . economic or monetary loss, or a defect in or damage to property which originates under circumstances making the injury, loss, defect or damage not readily apparent to the claimant at the time of its origin, and the injury, loss, defect or damage is discovered or should reasonably be discovered by the claimant two or more years after the occurrence of the last act of the defendant giving rise to the cause of action, suit must be commenced within one year from the date discovery is made: Provided nothing herein shall be construed to reduce the statute of limitation in any such case below three years. Provided further, that in no event shall an action be commenced more than four years from the last act of the defendant giving rise to the cause of action[.]

The trial court concluded at the time of trial that

[a]ssuming Chicago Title's first discovery of the Centura [deed of trust] as a lien prior to BB&T's 2003 [deed of trust] was on March 26, 2007, the three year statute of limitations for Chicago Title to commence an action for negligent misrepresentation [against the Banzet Firm] still ha[d] not expired.

Similarly, the trial court concluded that the three-year statute of limitation set forth in N.C.G.S. § 1-15 would have expired on 11 April 2006, and that the

[f]our year statute of repose set forth in N.C. Gen. Stat § 1-15 would have expired . . . on April 11, 2007, but Chicago Title did not commence any action against [the Banzet Firm], Lewis A. Thompson, or Julius Banzet, III before April 11, 2007, even though Chicago Title had received BB&T's Claim Letter two weeks before that date.

Chicago Title argues that the trial court improperly applied N.C.G.S. § 1-52(9) and that "the only proper claim" available against Thompson was "one for professional negligence[,]" which would apply the statute of limitations set forth in N.C.G.S. § 1-15. However, the trial court found as fact that Chicago Title had

a period of at least eight (8) days . . . to determine what actions, if any, it could . . . take against [the Banzet Firm and Thompson and/or Banzet] . . . prior to the expiration of the four (4) year period of time following [the] parties['] last act with respect to Chicago [Title's] issuance of the [2003 policy]. Chicago Title did not take any such actions against said attorneys.

Chicago Title does not contest this finding of fact and it is, therefore, binding on appeal. *Cornell v. Western & S. Life Ins. Co.*, 162 N.C. App. 106, 110-11, 590 S.E.2d 194, 297 (2004) (citation omitted). The trial court found that Chicago Title was not time barred from filing a claim for professional negligence or negligent misrepresentation, but it took no such actions against The Banzet Firm, Thompson, or Banzet.

We find that, at the time Chicago Title was notified of BB&T's claim and of the Centura deed of trust, Chicago Title was not barred, by either N.C.G.S. § 1-15 or N.C.G.S. § 1-52(9), from filing a claim for professional malpractice or negligent misrepresentation against the Banzet Firm, Thompson, or Banzet. Chicago Title did not suffer any prejudice as a result of any delay by BB&T in informing Chicago Title of the Centura deed of trust; therefore, section 3 of the 2003 policy does not apply.

In addition, Chicago Title issued the Centura policy for the Centura deed of trust. The Banzet Firm provided both the preliminary and the final title opinions for the Centura deed of trust. The Centura policy covered the Centura deed of trust at issue in the present case.

"Ordinarily, an insurance company is presumed to be cognizant of data in the official files of the company, received in formal dealings with the insured." *Gouldin v. Insurance Co.*, 248 N.C. 161, 165, 102 S.E.2d 846, 849 (1958) (citation omitted). "[K]nowledge of the prior existing policy may be inferred from the fact that both policies are issued by the same company and upon the same life." *Hicks v. Insurance Co.*, 226 N.C. 614, 617, 39 S.E.2d 914, 916 (1946).

> " 'Knowledge of facts which the insurer has or should have had constitutes notice of whatever an inquiry would have disclosed and is binding on the insurer. The rule applies to insurance companies that whatever puts a person on inquiry amount in law to 'notice' of such facts as an inquiry pursued with ordinary diligence and understanding would have disclosed.' "

*Supply Co. v. Insurance Co.*, 49 N.C. App. 616, 620, 272 S.E.2d 394, 397 (1980) (citation omitted).

> The majority of decided cases adopt the view that where the insurer is affected with knowledge of the existence of the prior policy, either the issue of the second policy or the continued acceptance, with such knowledge, of premiums paid thereupon, will work an estoppel or constitute a waiver of the condition.

*Hicks*, 226 N.C. at 617, 39 S.E.2d at 916. In the present case, Chicago Title issued the Centura policy in 1998 for the exact real property currently at issue. Chicago Title argues it had no notice of the Centura deed of trust that was insured by the Centura policy that Chicago Title itself issued.

Furthermore, the 2003 policy excludes from coverage "[d]efects, liens, encumbrances, adverse claims or other matters . . . not known to [Chicago Title], not recorded in the public records at Date of Policy, but known to [BB&T] and not disclosed in writing to [Chicago Title] by [BB&T] prior to the date [BB&T] became an insured under this policy[.]" By specifically excluding from coverage liens not recorded prior to the issuance of the 2003 policy, Chicago Title implicitly agreed to insure against liens that were recorded prior to the issuance of the 2003 policy. "[T]he doctrine of *expressio unius est exclusion* [alterius] ('expression of one thing is the exclusion of the other') is still the rule in North Carolina[.]" *In re Appeal of Appalachian Student Housing Corp.*, 165 N.C. App. 379, 388, 598 S.E.2d 701, 706 (2004); *see also Pritchard v. Steamboat Co.*, 169 N.C. 457, 460-61, 86 S.E. 171, 173 (1915) (*expressio unius est exclusio alterius* applied in interpreting deed). Chicago Title defines "public records" in the 2003 policy as "records established under state statutes at Date of Policy for the purpose of imparting constructive notice of matters relating to real property to purchasers for value and without knowledge." In uncontested finding of fact number 9, the trial court found: "The Centura Deed of Trust was recorded prior to BB&T's 2003 Deed of Trust." Therefore, by the express terms of the 2003 policy, which Chicago Title drafted and issued, Chicago Title had constructive notice of the Centura deed of trust at the time it issued the 2003 policy.

We find that, because Chicago Title was the insurer of the Centura deed of trust, Chicago Title is presumed to have had knowledge of the existence of the Centura deed of trust. An inquiry by Chicago Title, "pursued with ordinary diligence and understanding" would have revealed the Centura policy issued by Chicago Title and the underlying Centura deed of trust. We find this to be sufficient notice to Chicago Title of an additional encumbrance on the 2003 deed of trust, regardless of the timing of notice presented by BB&T. We hold that Chicago Title had either actual or constructive notice of the Centura deed of trust at the time it issued the 2003 policy. This argument is without merit.

We note that though Chicago Title included the order filed 3 November 2009 denying its motion to compel in its notice of appeal to our Court, Chicago Title makes no argument on appeal concerning the 3 November 2009 order. Chicago Title has therefore abandoned any appeal it may have had from the 3 November 2009 order. N.C.R. App. P. 28(b)(6); *Dogwood Dev. & Mgmt. Co., LLC v. White Oak Transp. Co.*, 362 N.C. 191, 200, 657 S.E.2d 361, 367 (2008).

Affirmed.

Judges HUNTER, JR. and BEASLEY concur.