ZICKGRAF HARDWOOD COMPANY, D/B/A NANTAHALA LUMBER COMPANY
v. RALPH SEAY AND WIFE, JIMMIE N. SEAY

No. 8130SC1403

(Filed 21 December 1982)

1. **Accounts § 2— insufficient evidence to find account stated formed**
   The trial court erred in denying the femme defendant's motions for a directed verdict and motion for judgment notwithstanding the jury verdict for plaintiff on an account stated where the evidence showed that the account was created by express agreement between the femme defendant's husband and plaintiff's agent; that the femme defendant was not a party to that agreement; that the account itself, invoices and monthly statements were only in the name of the femme defendant's husband; and that the femme defendant neither participated in the opening of the account nor sought credit with the plaintiff in her own name.

2. **Principal and Agent § 1— relationship of husband and wife—insufficient to establish agency**
   The fact that the femme defendant indirectly received and enjoyed the benefit of her husband's contract with the plaintiff via maintenance and support which she was entitled to receive from her husband under the law was insufficient to establish a business relationship and agreement between the defendants.

3. **Partnership § 1.2— evidence of wife as co-owner of business insufficient**
   The record was devoid of any evidence that the femme defendant was an owner or principal of her husband's building business where, at most, the evidence showed that the femme defendant was an employee of her husband who performed mainly secretarial and bookkeeping tasks at his direction.

APPEAL by defendant from *Thornburg, Judge.* Judgment entered 27 July 1981 in Superior Court, MACON County. Heard in the Court of Appeals 13 October 1982.

Plaintiff instituted this action against defendants Ralph Seay and his wife, Jimmie N. Seay for recovery upon an open account. The plaintiff, Zickgraf Hardwood Co., d/b/a Nantahala Lumber Co., alleged in its complaint and amended complaint that the defendants purchased building materials, goods and supplies from the plaintiff, upon an open account between 1 January 1977 and 30 June 1977, and that there was a balance due on said account of $8,186.49 which the defendants refused to pay.

In their answer, defendants denied the material allegations of the complaint and specifically denied that the defendant Jimmie N. Seay had ever purchased any building materials, goods and supplies from the plaintiff on her own behalf or in any other capacity upon an open account.

The matter came on for jury trial. The defendants unsuccessfully moved for a directed verdict at the close of plaintiff's evidence and at the close of all the evidence. The jury returned a verdict against both defendants on an account stated, finding that Mrs. Seay was principal or an owner in the business. The defendants' motions for judgment notwithstanding the verdict or in the alternative for a new trial were denied and defendant Jimmie N. Seay appeals.

*McKeever, Edwards, Davis & Hays, P.A., by Fred H. Moody, Jr., for defendant appellant.*

*Jones, Key, Melvin & Patton, P.A., by Russell R. Bowling for plaintiff appellee.*

JOHNSON, Judge.

This is an appeal from a jury verdict for plaintiff on an account stated. The issue on appeal is whether the trial court should have granted the defendant wife's motions for directed verdict because she was not a partner in the business and was not otherwise liable on the account. For the reasons stated below, we conclude that a directed verdict in favor of Jimmie Seay should have been entered and the case against her dismissed.

It is well settled that a motion for directed verdict under Rule 50 of the North Carolina Rules of Civil Procedure may be granted only if the evidence is insufficient, as a matter of law, to

support a verdict for the plaintiff. *See e.g., Arnold v. Sharpe*, 296 N.C. 533, 251 S.E. 2d 452 (1979); *Trust Co. v. Smith*, 44 N.C. App. 685, 262 S.E. 2d 646 (1980). In determining motions for directed verdict and for judgment notwithstanding the verdict, the court must consider all relevant evidence admitted at trial in a light most favorable to the plaintiff with contradictions and conflicts resolved in plaintiff's favor. *Johnson v. Clay*, 38 N.C. App. 542, 248 S.E. 2d 382 (1978).

At trial, the plaintiff's evidence disclosed that the plaintiff was a corporation engaged in the business of selling building materials and supplies, and that the defendant Ralph Seay purchased building materials on credit under an account in the name of "Mr. Ralph Seay, Builder," or "Ralph Seay," from William Roten, plaintiff's credit manager. Purchases were made by way of invoices written by plaintiff's agents. Each invoice was addressed to "Ralph Seay." During this period plaintiff mailed monthly statements of the account, each addressed to Ralph Seay. Roten testified that none of the statements for these accounts had Mrs. Jimmie Seay's name on them.

Plaintiff received several payments on the Ralph Seay account by cashier's checks and by checks drawn on the bank account of Twin Oaks Company. Ralph Seay was the payor on each cashier's check. Ralph Seay signed all but one of the Twin Oaks checks. That one check was signed by Jimmie Seay at her husband's direction. Apparently a difference developed between Mr. Seay and plaintiff as to the balance due on the account. In August 1978, Mr. Seay instructed Mrs. Seay that the business no longer owed plaintiff money on the account.

Mrs. Seay accompanied her husband to the plaintiff's place of business more than once, picked up the materials he ordered, and signed some of the invoices to evidence receipt of various goods sold.

On several occasions when Mr. Roten talked with Ralph Seay, Jimmie Seay was present. On one occasion when Roten visited a building site he saw the Seays trying to determine a paint color for the kitchen. Jimmie Seay never "sat down with" Roten to calculate materials according to a set of building plans. Roten observed Jimmie in Ralph's office on three occasions; she was answering the phone and had various papers on her desk. On

recross-examination Roten testified that he believed that Twin Oaks Company belonged to both Seays.

> I base my belief that it was their company because when a man and his wife own a business, they own a business. I was never told any different and I therefore, believe that Mr. and Mrs. Ralph Seay own Twin Oaks Company. I base my belief on the fact that they were married and that I was never told any different.

After September 1978, Roten spoke with Mr. Seay about his account twice by telephone. The first time, Mrs. Seay answered the phone, and Roten believes that before calling Mr. Seay to the phone she told him that something would be coming in.

Jimmie Seay testified that she worked as a part-time office employee for her husband, keeping the ledgers current, making out the payroll and answering the telephone. Since she knew how much money was in the bank, Mr. Seay would discuss making the payments to plaintiff with her, and Mrs. Seay would then write out a check. Jimmie Seay further testified that she wrote the checks at her husband's direction and never personally discussed Mr. Seay's account with any one from the plaintiff company. She was present when Mr. Seay made arrangements about the accounts but she never requested credit with plaintiff for herself nor signed any credit agreement or other contract concerning credit with plaintiff.

On cross-examination Jimmie Seay stated that she had no other employment. Her husband did not pay her directly for her work in the form of wages, but rather, he "put the food on the table" for her and the children and provided for their general living expenses from the business money. The Twin Oaks Company was a name Mr. Seay chose. Mr. Seay provided the money for that account. Mrs. Seay never wrote a check from the Twin Oaks Company bank account for any of her personal expenses. The Seays also had a personal bank account. Ralph Seay never transferred any funds from the Twin Oaks Account to their personal account, although he did transfer funds from the personal account to the Twin Oaks Company.

Ralph Seay's testimony corroborated the material aspects of Mrs. Seay's testimony.

[1]  The evidence presented was insufficient as a matter of law to support a verdict obligating Jimmie Seay, as a principal, to pay the account. The plaintiff's theory of the case and the issue eventually submitted to the jury was that the plaintiff's account was an account stated.

> "An account stated may be defined, broadly, as an agreement between the parties to an account based upon prior transactions between them, with respect to the correctness of the separate items composing the account, and the balance, if any, in favor of the one or the other. The amount or balance so agreed upon constitutes a new and independent cause of action, superseding and merging the antecedent causes of action represented by the particular constituent items; it is a liquidated debt, as binding as if evidence by a note, bill or bond." 1 Am. Jur. 272, Accounts and Accounting, Section 16.

*Teer Co. v. Dickerson, Inc.*, 257 N.C. 522, 530, 126 S.E. 2d 500, 506 (1962).

In this case, the account was created by express agreement between Ralph Seay and plaintiff's agent. Jimmie Seay was not a party to that agreement. The account itself, invoices and monthly statements bore only the name of Ralph Seay. Jimmie Seay neither participated in the opening of the Ralph Seay account, nor sought credit with plaintiff in her own name. The record is devoid of any formal act by Jimmie Seay which would directly obligate her to pay plaintiff's account.

[2]  We note that, as a general rule, the relationship of husband and wife standing alone, does not create any presumption or proof that the husband is authorized to act as the agent for his wife. *Air Conditioning v. Douglass*, 241 N.C. 170, 84 S.E. 2d 828 (1954). Plaintiff cites *Norburn v. Mackie*, 262 N.C. 16, 136 S.E. 2d 279 (1964) for the proposition that the agency of the husband for the wife may be shown by direct evidence or by evidence of such facts and circumstances as will authorize a reasonable and logical inference that the husband is empowered to act for his wife. Furthermore, that only slight evidence of the agency of the husband for the wife suffices where she receives, retains and enjoys the benefit of the contract. *Id.* at 23, 136 S.E. 2d at 284. Plaintiff argues that because Jimmie Seay indirectly received and enjoyed

the benefit of her husband's contract with the plaintiff, she should be charged as the principal of the building business, and bound by the acts of her husband acting as her agent.

The only evidence plaintiff points to in support of this argument is the fact that money generated by the building business provided Mrs. Seay and the Seay children with their support and income. Viewed in the light most favorable to plaintiff, this evidence shows only that Mrs. Seay received the maintenance and support which she was entitled to receive from her husband under the law. This cannot be used to establish a business relationship and agreement between Mr. and Mrs. Seay. *Supply Co. v. Reynolds*, 249 N.C. 612, 107 S.E. 2d 80 (1959).

[3] Plaintiff also argues that the facts and circumstances of this case support the determination that a partnership exists by virtue of Jimmie Seay's participation in the management and control of the building business as a co-owner.

The Uniform Partnership Act defines a partnership as "an association of two or more persons to carry on as co-owners a business for profit." G.S. 59-36(a).

A partnership is a combination of two or more persons of their property, effects, labor, or skill in a common business or venture, under an agreement to share the profits or losses in equal or specified proportions, and constituting each member an agent of the others in matters appertaining to the partnership and within the scope of its business. *Johnson v. Gill*, 235 N.C. 40, 68 S.E. 2d 788 (1952). The record is devoid of any evidence that Mrs. Seay was an owner or principal of her husband's building business. At most, the evidence shows that Mrs. Seay was an employee of her husband who performed mainly secretarial and bookkeeping tasks at his direction. The record shows that it was Mrs. Seay's responsibility to keep the payroll and financial paperwork in order. When a payment was due, she discussed the financial matters of the business with her husband only to the extent of informing him of the balance present in the business bank account.

There is no evidence of Jimmie Seay's having made independent managerial decisions or having exercised independent control over the affairs of the business. Plaintiff's agent admitted that

Jimmie Seay never sat down with him to calculate what materials would be needed for a particular job. He merely believed that because defendants were husband and wife, they both owned the Twin Oaks Company.

The Seays' personal bank account was separate from the Twin Oaks bank account. Significantly, Mrs. Seay never drew money from the Twin Oaks account for her personal use. The fact that Mr. Seay did not formally cause a paycheck to be issued to Mrs. Seay in return for her office work does not give rise to the inference that Mrs. Seay was a co-owner of the business, receiving a share of the profits rather than wages as an employee. G.S. 59-37(4)(b).

The evidence was insufficient as a matter of law to support a jury verdict against defendant Jimmie Seay under a theory of either agency or partnership. The trial court erred in denying defendant's motion for directed verdict at the close of all the evidence.

Reversed.

Chief Judge MORRIS and Judge BECTON concur.