Williams v. Hammer, 2015 NCBC 78.

STATE OF NORTH CAROLINA

COUNTY OF WAKE

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
15 CVS 3199

RONALD DUANE WILLIAMS and
WILLIAMS GENERAL CONTRACTORS,
LLC,

    Plaintiffs,

     v.

KIMBERLY HAMMER and BITTERSWEET
COFFEE, INC.,

    Defendants.

)
)
)
)
)
)
)
)
)
)
)
)

**OPINION AND ORDER**

THIS CAUSE, designated a mandatory complex business case by Order of the Chief Justice of the North Carolina Supreme Court pursuant to N.C. Gen. Stat. § 7A-45.4(b) (hereinafter, references to the North Carolina General Statutes will be to "G.S."), and assigned to the undersigned Special Superior Court Judge for Complex Business Cases, comes before the Court upon Defendants' Motion to Dismiss ("Motion to Dismiss") pursuant to Rule 12(b)(6) of the North Carolina Rules of Civil Procedure ("Rule(s)"); and

THE COURT, after reviewing the Motion to Dismiss, briefs in support of and in opposition to the Motion to Dismiss, and other appropriate matters of record, CONCLUDES as follows.

> *Williams Mullen, by Gilbert C. Laite III, Esq. and Edward James Coyne III, Esq. for Plaintiffs Ronald Duane Williams and Williams General Contractors, LLC.*

> *Hiller Law PLLC, by Joshua M. Hiller, Esq. for Defendants Kimberly Hammer and Bittersweet Coffee, Inc.*

McGuire, Judge.

<u>PROCEDURAL HISTORY</u>

1. On March 13, 2015, Plaintiffs Ronald Williams ("Williams") and Williams General Contractors, LLC ("WGC") (collectively, "Plaintiffs") filed a Complaint against Defendants Kimberly Hammer ("Hammer") and Bittersweet Coffee, Inc. ("Bittersweet, Inc.")

(collectively, "Defendants"). Plaintiffs' action was designated No. 15 CVS 3199 by the Clerk of Superior Court of Wake County. The Complaint seeks a declaratory judgment regarding the legal relationship between the parties.

2. On May 5, 2015, Defendants filed the Motion to Dismiss, seeking dismissal of the Complaint pursuant to Rule 12(b)(6).

3. The Motion to Dismiss has been fully briefed and is ripe for determination.

## FACTUAL BACKGROUND

Among other things, the Complaint alleges that:

4. Plaintiff Williams is the principal for Plaintiff WGC, a limited liability company organized pursuant to the laws of the State of North Carolina and licensed as a general contractor. Williams has a background in general contracting.[1]

5. Defendant Hammer is the sole shareholder and principal of Defendant Bittersweet, Inc. Bittersweet, Inc. is a North Carolina corporation. Hammer has a background in food service.[2]

6. Beginning in early 2013, Williams and Hammer discussed opening a café in downtown Raleigh.[3] As part of these discussions, between May and June 2013, Williams and Hammer entered into a "Memorandum of Understanding" ("MOU"), an "Agreement," and a "Distribution Percentage Agreement." ("Distribution Agreement").[4] On September 2, 2014, Williams and Hammer executed several handwritten documents.[5]

---

[1] Compl. ¶ 1, 2.
[2] *Id.* ¶¶ 2, 3, 12g.
[3] *Id.* ¶ 5.
[4] *Id.* ¶ 6.
[5] Though these documents are all referenced in the Complaint, none are attached to the Complaint. However, the MOU and Distribution Agreement are attached to the Defendants' Memorandum of Law in Support of Motion to Dismiss, and at least some of the handwritten notes are attached to the Plaintiffs' response brief. Because they have been incorporated by reference into the Complaint, the Court may properly consider these documents in reviewing the Motion to Dismiss. *See Oberlin Capital, L.P. v. Slavin*, 147 N.C. App. 52, 60-61 (2001).

7.     These documents apparently were intended to formalize an agreement between the parties regarding the creation and operation of the contemplated café in leased premises ("Premises") in downtown Raleigh. In pertinent part, the MOU provides that:

- Hammer would be the "100% owner of Bittersweet and Williams or WGC [would] not be an owner of Bittersweet;"[6]

- Bittersweet would enter into a lease with a third-party landlord for the Premises and would be responsible for that lease;

- Plaintiffs and Defendants would enter into a contract to provide for the upfit of the leased space, in exchange for which Plaintiffs would receive a contractor's fee of $35,000;

- Plaintiffs and Hammer were to each to contribute capital in specified amounts to finance the startup expenses of the café;

- Hammer would be "solely responsible for decisions and actions related to personnel and HR issues" and management and operational decisions of Bittersweet, but would "work in good faith to consult with Williams regarding any expenditures outside of the ordinary course of business in excess of $1,500;"[7] and,

- "Except for the limited right provided herein, Williams/WGC [would] not have any rights with respect to the management, expenditures or business operations of Bittersweet."

8.     The MOU also has a section entitled "Sharing of Profits," in which the parties identify an "Initial Distribution Period" during which the parties would receive pro-rata payments based upon their outstanding contributions to startup expenses. Upon complete repayment of startup expenses, Plaintiffs' share would increase, and Defendants' share would decrease, on an incremental basis until Defendants would no longer be entitled to any of the profits. The MOU does not discuss any sharing between Plaintiffs and Defendants of any potential loss incurred by Bittersweet Café, though the Complaint alleges that "Hammer

---

[6] MOU at 1.
[7] *Id.* at 3.

and Williams bear[] the same risk of loss—i.e. their respective contributions to the 'Operating Capital and Startup Expenses.'"[8]

9. On May 8, 2014, Williams and Hammer entered into the "Distribution Agreement." The Agreement provided that it was "to memorialize the Distribution Percentage between Hammer and Williams/WGC for Startup Expenses, Capital Contributions and Profit Sharing as outlined in the [MOU]."[9] The Agreement provided that as of that date Williams had contributed capital of $428,840.00, and Williams had contributed $66,165.00, resulting in Williams' Distribution Percentage being 86%, and Hammer's 14%.

10. While no final agreement was ever reached between the parties, none of the aforementioned documents contain a merger clause, and the MOU states that:

> This Memorandum of Understanding shall be conditioned in its entirety by and subject to a written agreement between the parties relating to the subject matter hereof *if such agreement is executed. In the event that no such agreement is executed prior to Bittersweet's execution of the Lease, the executed Memorandum of Understanding shall become legally binding on the parties* hereto upon Bittersweet's execution of the lease and shall continue for so long as Bittersweet is a lessor of the Premises . . . .[10]

11. In furtherance of the agreements contemplated and executed by the parties, during 2013 and 2014, Hammer incorporated Bittersweet, Inc., executed a lease on behalf of Bittersweet, Inc., and stocked and staffed the business to be located in the Premises. Plaintiffs undertook the "build out" of the Premises. Both parties contributed money to these endeavors. In July 2014, Bittersweet Café opened in the Premises.

12. The Complaint alleges that communication has "broken down" between Plaintiffs and Defendants since shortly after the opening of Bittersweet Café, but does not

---

[8] Compl. ¶ 12(j).
[9] Distribution Percentage Agreement 1.
[10] MOU at 7 (emphasis added).

allege that Defendants have failed or refused to perform any obligation imposed upon them by the MOU, Distribution Agreement, or any other agreement between the parties.[11]

13. Plaintiffs allege that "Williams has asserted that he believes that the relationship between at least certain [parties] is in the nature of a partnership or joint venture" and that Hammer disagrees with this assertion.[12] Plaintiffs also allege that "Williams has asserted that he believes that the Parties agreed to certain minimum distributions or payments to Williams," but that Hammer also disagrees with this assertion.[13] Finally, the Complaint alleges that "[r]egardless of the nature of the relationship between the parties, there is an actual case and controversy regarding the rights and remedies existing between the Parties."[14] The Complaint does not allege what Hammer believes to be the legal relationship between the parties.

14. The Complaint alleges a single cause of action for "Declaratory Judgment," and specifically requests that the Court issue a declaration "that [ ] Williams and/or WGC and [ ] Hammer and/or Bittersweet Coffee, Inc. entered into a partnership (or joint venture) relationship," and that the Court define the rights and responsibilities of each party.[15] Alternatively, Plaintiff requests that the Court "otherwise declare the nature and terms of the relationship among and between" the parties and define the rights and responsibilities of each party.[16]

<u>Analysis</u>

15. Defendants seek dismissal of Plaintiffs' claims on the grounds that (a) the allegations in the Complaint and underlying documents do not support the existence of a

---

[11] Compl. ¶ 11.
[12] *Id.* ¶¶ 14-15.
[13] *Id.* ¶¶ 16-17.
[14] *Id.* ¶ 19.
[15] *Id.*, Prayer for Relief ¶ 1.
[16] *Id.*, Prayer for Relief ¶ 2.

partnership or a joint venture between the parties, and (b) Plaintiffs' alternative prayer for declaratory relief is no more than an impermissible request for an advisory opinion.

16. The Court, in deciding a Rule 12(b)(6) motion, treats the well-pleaded allegations of the complaint as true and admitted. *Sutton v. Duke*, 277 N.C. 94, 98 (1970). However, conclusions of law or unwarranted deductions of fact are not deemed admitted. *Id*. The facts and permissible inferences set forth in the complaint are to be treated in a light most favorable to the nonmoving party. *Ford v. Peaches Entm't Corp.*, 83 N.C. App. 155, 156 (1986). The Court should grant a Rule 12(b)(6) motion when the complaint, on its face, reveals (a) that no law supports the plaintiff's claim, (b) the absence of facts sufficient to form a viable claim, or (c) some fact which necessarily defeats the plaintiff's claim. *Jackson v. Bumgardner*, 318 N.C. 172, 175 (1986).

17. Under North Carolina law, a declaratory judgment is a statutory remedy that grants a court the authority to "declare rights, status, and other legal relations" when an "actual controversy" exists between parties to a lawsuit. G.S. § 1-253; *Pine Knoll Shores v. Carolina Water Serv., Inc.,* 128 N.C. App. 321, 321 (1998). The Court may, by declaratory judgment, "determine[] questions of construction or validity" and declare "rights, status, and other legal relations" under a "written contract." G.S. § 1-254. The presence of a real or existing controversy between adverse parties, however, is an essential requirement of any declaratory judgment action. "The Uniform Declaratory Judgment Act does not license litigants to fish in judicial ponds for legal advice, [or] undertake to convert judicial tribunals into counsellors [sic] and impose upon them the duty of giving advisory opinions to any parties who may come into court and ask for either academic enlightenment or practical guidance concerning their legal affairs." *Calabria v. N.C. State Bd. of Elections*, 198 N.C. App. 550, 553-54 (2009) (quoting *Lide v. Mears*, 231 N.C. 111, 117-18 (1949) (alterations in original)).

18.     When the record reveals the lack of a basis for declaratory relief, a Rule 12(b)(6) motion may be granted against a declaratory judgment claim. *Kirkman v. Kirkman*, 42 N.C. App. 173, 176 (1979).  In essence, a declaratory judgment claim is subject to dismissal where the relevant pleadings do not contain allegations upon which the sought declaratory relief may be granted.

*Partnership*

19.     Plaintiffs first ask this Court to declare that a partnership relationship existed between the parties.  The Complaint does not allege, nor do the MOU and Distribution Percentage Agreement support a contention that, Plaintiffs and Defendants explicitly contracted to form a "partnership." Neither the word "partners" nor "partnership" appear anywhere in the agreements that have been provided to the Court. Nonetheless, a *de facto* partnership may be found in the absence of a written agreement, "based upon a rational consideration of the acts and declarations of the parties, warranting the inference that the parties understood that they were partners and acted as such." *Potter v. Homestead Preservation Ass'n*, 330 N.C. 569, 576-77 (1992) (citations omitted); *see also Best Cartage, Inc. v. Stonewall Packaging, LLC*, 219 N.C. App. 429, 438 (2012).

20.     The North Carolina Uniform Partnership Act, codified at Chapter 59 of our General Statutes, provides the basis for the "legal concept" of partnership. The Act defines a partnership as "an association of two or more persons to carry on as co-owners a business for profit." G.S. § 59-36(1). Our Supreme Court has elaborated:

> To make a partnership, two or more persons should combine their property, effects, labor, or skill in a common business or venture, and under an agreement to share the profits and losses in equal or specified proportions, and constituting each member an agent of the others in matters appertaining to the partnership and within the scope of its business.

*Johnson v. Gill*, 235 N.C. 40, 44-45 (1952) (internal quotations and citations omitted).  While North Carolina courts have considered a variety of factors in evaluating whether a

partnership exists, "co-ownership and sharing of any actual profits are **indispensable requisites** for a partnership." *Best Cartage, Inc.*, 219 N.C. App. at 438 (quoting *Wilder v. Hobson*, 101 N.C. App. 199, 202 (1990)) (emphasis added). Failure to properly allege facts supporting the existence of one or both of these elements is fatal to a claim for declaratory judgment of a partnership.

21. The first requirement is "sharing of any actual profits." *Wilder*, 101 N.C. App. at 202 (citing *Sturm v. Goss*, 90 N.C. App. 326 (1988)). Defendants do not argue that the agreements between the parties did not provide for a sharing of profits, and the Court concludes that the agreements at issue in this case clearly provided that profits would be shared between Plaintiffs and Defendants.[17] Plaintiffs have adequately alleged a sharing of profits to support the existence of a partnership.

22. The allegations and documents also reveal certain other indicia of a partnership between the parties: both parties contributed capital to the arrangement, and each brought their skills, experience and labor to the opening and operation of the café.

23. Plaintiff has not alleged, however, the second "indispensable requisite" of a partnership: "co-ownership of the business." G.S. § 59-36(1); *see McGurk v. Moore,* 234 N.C. 248 (1951) (citations omitted) (finding that an arrangement in which one purported partner operated the business, the other provided capital for the business, and the parties would divide net profits equally once all capital was repaid, did not constitute co-ownership of the business). The Complaint does not allege that the Plaintiffs and Defendants co-owned any

---

[17] Defendants, however, make a compelling argument that a partnership requires the sharing of both profits and losses, and that Plaintiffs failed to adequately allege a sharing of losses. Defendants contend that North Carolina cases suggesting that only profits must be shared are premised on a misreading by the North Carolina Court of Appeals of the holding in *Johnson v. Gill*, 235 N.C. at 44-45, in *Zickgraf Hardwood Co. v. Seay*, 60 N.C. App. 128, 133 (1982). In *Zickgraf*, the Court cited Johnson for the proposition that existence of a partnership required "agreement to share profits <u>or</u> losses." *Id.* Defendants contend that the Supreme Court's holding in *Johnso*n that a partnership requires a sharing of profits <u>and</u> losses has been misconstrued based on the misreading in *Zickgraf.* Defs.' Br. Supp. Mot. Dismiss 7-8. Because the Court concludes that Plaintiffs' allegations are insufficient to support the existence of a partnership for other reasons, it need not address Defendants' argument.

interest in a business or any other property, and the MOU expressly states that Hammer is the sole owner of Bittersweet, and that Williams and WGC have no ownership interest. The MOU also makes clear that Plaintiffs have no ownership interest in Hammer's other, existing businesses. The Distribution Agreement and other documents provided to the Court do not contain any reference to a co-ownership interest between Plaintiffs and Defendants.

24. In their brief, Plaintiffs contend that even if they have no ownership in Bittersweet, the MOU, Distribution Agreement, and other agreements might somehow be interpreted as creating a partnership in some other type of business. Specifically, they suggest that "it appears at least possible at this stage that the 'business' really contemplated by and between the parties was the development and operation of the real estate that is the Premises."[18] Plaintiff does not, however, explain how such an interpretation of the parties' arrangement would meet the requirement of pleading co-ownership. The Court concludes that the Complaint and incorporated documents do not allege that Plaintiffs and Defendants had a co-ownership interest in a business that would support a finding that they were in a partnership.

*Joint Venture*

25. If not a partnership, Plaintiffs seek a declaration from the Court that the relationship between the parties constituted a joint venture. The North Carolina Supreme Court has held that:

> A joint venture is an association of persons with intent, by way of contract, express or implied, to engage in and carry out a single business adventure for joint profit, for which purpose they combine their efforts, property, money, skill, and knowledge, but without creating a partnership in the legal or technical sense of the term. . .
> Facts showing the joining of funds, property, or labor, in a common purpose to attain a result for the benefit of the parties in which each has a right in some

---

[18] Pls.' Br. Opp. Mot. Dismiss 11.

measure to direct the conduct of the other through a necessary fiduciary relation, will justify a finding that a joint adventure exists.

*Pike v. Wachovia Bank & Trust Co.*, 274 N.C. 1, 8-9 (1968) (citation omitted).

26.    "[T]he essential elements of a joint venture are (1) an agreement to engage in a single business venture with the joint sharing of profits, (2) with each party to the joint venture having a right in some measure to direct the conduct of the other *'through a necessary fiduciary relationship.'*" *Se. Shelter Corp. v. BTU, Inc.*, 154 N.C. App. 321, 327 (2002) (emphasis in original) (citations omitted). In other words, "each joint venturer [must] stand in the relation of principal, as well as agent, as to each of the other coventurers . . . ." *Cheape v. Chapel Hill*, 320 N.C. 549, 562 (1987) (citation omitted).

27.    As stated above, while Plaintiffs may have successfully alleged an arrangement in which profits are to be shared, the allegations establish that neither party had the right to "to direct the conduct of the other." There are no allegations that Williams had the authority to make any decisions on behalf of the alleged joint venture, or that Hammer was bound in any way by Williams' input regarding Bittersweet's business. The MOU provides Hammer with virtually exclusive control over the daily operations of Bittersweet Café, and requires only that she "work in good faith to consult with Williams" regarding ordinary course of business purchases exceeding $1,500. The MOU goes on to state that "[e]xcept for the limited right provided herein, Williams/WGC shall not have any rights with respect to the management, expenditures or business operations of Bittersweet."[19]

28.    The allegations also do not support the notion that Williams and Hammer stood in an agency relationship with one another.  An agent is "one who acts for or in the place of another by authority from him." *Cheape*, 320 N.C. at 562 (citation omitted).  The Complaint does not allege, and the agreements do not provide, that Williams was authorized

---

[19] MOU at 3.

to act on behalf of Hammer, or vice-versa. To the contrary, the MOU makes it clear that Defendants are solely responsible for the lease of the Premises, and that Plaintiffs are not bound in any way by that lease. Williams, on the other hand, had exclusive control over the build out of the Premises. In other words, the agreements fail to place Williams and Hammer (or Plaintiffs and Defendants) "in the relation of principal, as well as agent, as to each [other]." *Id.*

29. The Complaint does not allege facts upon which the Court could grant Plaintiffs the requested relief of a declaration that the agreements between the Plaintiffs and Defendants created a partnership or a joint venture. Accordingly, the Motion to Dismiss is GRANTED as to these requested declarations.

30. Although not explicitly set out in the relief requested in the Complaint, Plaintiff alleges that there is a dispute between the parties as to whether Plaintiffs are still owed certain minimum payments by Defendants under the agreements between the parties. Defendants have not expressly moved for dismissal of, nor made argument regarding, this alleged controversy. As discussed *supra*, in reviewing a Rule 12(b)(6) motion to dismiss, the allegations should be reviewed in favor of the non-moving party. *Ford*, 83 N.C. App. at 156. Accordingly, to the extent Plaintiff seeks a declaration regarding whether they are owed certain minimum payments under the agreements, Defendants motion to dismiss this claim should be DENIED.

*Rights/Status of the Parties*

31. In the alternative, Plaintiffs ask the Court to "declare the nature and terms of the relationship among and between [Plaintiffs and Defendants]" including "[t]he parties to that relationship," "[t]he rights, duties, and remedies" and "[t]he other rights and obligations"

arising from that relationship.[20] Defendants argue that this amounts to a request for a "purely advisory opinion which the parties might, so to speak, put on ice to be used if and when occasion might arise." *Gaston Bd. of Realtors, Inc. v. Harrison*, 311 N.C. 230, 234 (1984).

32. In their brief, Plaintiffs suggest that the Complaint raises the following "actual, genuine, consequential questions" for which they seek declarations:

- If the relationship between the parties is one of debtor/creditor, who is the creditor(s) and who is the debtor(s)?

- If the relationship between the parties is one of debtor/creditor, what recourse does the creditor(s) have in the event the debtor(s) defaults?

- What is the effect of the September 2 Writings? Do they require a monthly payment to Williams sufficient to reply the "operating capital" before the end of the lease of the Premises? If not, what do they mean (or is it possible, as Defendants appear to contend, that although Hammer and Williams chose to execute a number of writings on September 2, 2014, those writings have no meaning at all)?

- Do the Defendants have a right to allocate revenue of Bittersweet Inc. to pay for their own legal fees and thereby reduce the "profit" available to be paid to Plaintiffs? What other, if any, limitations are there on Hammer's ability to manipulate profits via her control, in large part, of the costs of Bittersweet Inc.?

- Does the later-entered Percentage Agreement, which states "[a]s outlined in the Memorandum of Understanding, the Startup Expenses will be repaid in full to each party before there is any distribution of Profits," (Defs.' Memo Ex. B at pg.1), control over the MOU, which seems to contemplate that any payments of profit to Williams will cease on December 10, 2022, regardless of whether he has been paid back his portion of the Startup Expenses (Defs.' Memo Ex. A at pgs. 3–5, Section entitled "Sharing of Profits")? That is, given this apparent contradiction in the documents, does Williams have a right to be repaid in full before Hammer is ever paid more than 14% of the profits of Bittersweet Inc.?

---

[20] Compl., Prayer for Relief ¶ 2.

- What is the basis of the parties [sic] relationship if Bittersweet Inc. abandons the Premises, in light of the MOU purporting to be binding only so long as Bittersweet Inc. is a "lessor" of the Premises?[21]

33. First and foremost, none of these questions are raised in the Complaint. Plaintiffs' request that the Court declare the nature of the relationship and the rights, duties and remedies of the parties under the written documents does not require the Court to parse through the various alleged agreements and determine how every controversy that may arise between Plaintiffs and Defendants would be resolved. In addition, the Complaint does not allege that Plaintiffs and Defendants hold conflicting positions on the answers to these questions. "[W]hen a litigant seeks relief under the declaratory judgment statute, he must set forth in his pleading all facts necessary to disclose the existence of an actual controversy between the parties to the action with regard to their respective rights and duties in the premises." *Lide*, 231 N.C. at 118; *accord N.C. Consumers Power, Inc. v. Duke Power Co.*, 285 N.C. 434, 449 (1974) ("A mere difference of opinion between the parties as to [the plaintiff's rights] -- without any practical bearing on any contemplated action -- does not constitute a controversy." The plaintiff must "allege in his complaint . . . , that a real controversy, arising out of their opposing contentions as to their respective legal rights and liabilities . . . , exists between or among the parties." (citation omitted)).

34. Plaintiffs have not alleged "all facts necessary to disclose" that a controversy exists between the parties' rights and obligations under the agreements. Instead, they effectively ask the Court to define all of the rights and obligations of the parties to guide them in administering the agreements. The Court declines to issue such an advisory declaration. While there may be genuine disputes between Plaintiffs and Defendants as to what various provisions of the agreements require them to do, those disputes must be more clearly pleaded.

---

[21] Pls.' Br. Opp. Mot. Dismiss 9-10.

Accordingly, Defendants' motion to dismiss Plaintiffs' alternative request that the Court "declare the nature and terms of the relationship among and between [Plaintiffs and Defendants]" including "[t]he parties to the relationship," "[t]he rights, duties, and remedies," and [t]he other rights and obligations" should be GRANTED without prejudice.

THEREFORE, IT IS ORDERED that:

35.    The Motion to Dismiss is GRANTED, in part, insofar as the Complaint seeks a finding that the parties entered into a partnership or joint venture.

36.    The Motion to Dismiss is GRANTED, in part, and the Complaint is DISMISSED WITHOUT PREJUDICE, insofar as the Complaint requests that the Court "declare the nature and terms of the relationship among and between [Plaintiffs and Defendants]" including "[t]he parties to the relationship," "[t]he rights, duties, and remedies," and [t]he other rights and obligations."

37.    The Motion to Dismiss is DENIED insofar as the Complaint requests a declaration that Plaintiffs are still owed certain minimum payments by Defendants under the agreements between the parties.

This the 12th day of August, 2015.

 /s/ Gregory P. McGuire
Gregory P. McGuire
Special Superior Court Judge
 for Complex Business Cases