An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA25-499

Filed 20 May 2026

Mecklenburg County, No. 22CVS019441-590

CMD, LLC, a North Carolina Limited Liability Company, Plaintiff,

v.

GRAEME M. KEITH, JR., CHRISTIAN C. KEITH, WILLIAM M. OLIVER and K.O. CARS, LLC, a South Carolina Limited Liability Company, Defendants,

and

GRAEME M. KEITH, JR., WILLIAM M. OLIVER and K.O. CARS, LLC, a South Carolina Limited Liability Company, Counterclaim and Third-Party Plaintiffs,

v.

CMD, LLC, a North Carolina Limited Liability Company, Counterclaim Defendant, and RYAN WILDRICK, Third-Party Defendant.

Appeal by plaintiff/counterclaim defendant and third-party defendant from order entered 27 December 2024 by Judge Louis A. Trosch, Jr., in Mecklenburg County Superior Court. Cross-appeal by defendants/third-party plaintiffs from order entered 5 February 2025 by Judge Justin N. Davis in Mecklenburg County Superior Court. Heard in the Court of Appeals 13 January 2026.

> *Randolph M. James, P.C., by Randolph M. James, and Burton Law Firm, PLLC, by Jason M. Burton, for plaintiff-appellant/counterclaim-defendant-cross-appellee.*

*James, McElroy & Diehl, P.A., by Preston O. Odom, III, John R. Buric, and John R. Brickley, for defendants-appellees/third-party-plaintiffs-cross-appellants.*

FLOOD, Judge.

Plaintiff/counterclaim defendant CMD, LLC and third-party defendant Ryan Wildrick (collectively "Plaintiffs"[1]) appeal from the trial court's order granting defendants/counterclaim and third-party plaintiffs Graeme M. Keith, Jr., William M. Oliver, and K.O. Cars, LLC's Supplemental Motion for Summary Judgment and the trial court's order denying Plaintiffs' motion to reconsider. Meanwhile, defendants Graeme M. Keith, Jr., Christian C. Keith, William M. Oliver, and K.O. Cars, LLC (collectively "Defendants"[2]) cross-appeal from the trial court's order granting Plaintiffs' Motion to Stay Trial Court Proceedings pursuant to N.C.G.S. § 1-294.

For the reasons stated below, we hold that our appellate jurisdiction is proper with respect to all orders appealed except the motion to reconsider and, for

---

[1] Although "Plaintiffs" refers to both CMD, LLC and third-party defendant Ryan Wildrick, we will occasionally refer to motions filed only by CMD, LLC as having been filed by "Plaintiffs." If and where analytically relevant, we will clarify which specific parties were involved in an action; however, for ease of reading and in acknowledgement of the fact that most of the forthcoming discussion pertains to the contents of the documents themselves, we will ordinarily refer to "Plaintiffs" collectively.

[2] "Defendants" refers to Graeme M. Keith, Jr., Christian C. Keith, William M. Oliver, and K.O. Cars, LLC—however, for reasons similar to our reference to "Plaintiffs" discussed in the previous footnote, we will occasionally refer to motions filed only by Graeme M. Keith, Jr., William M. Oliver, and K.O. Cars, LLC—not including Christian C. Keith—as having been filed by "Defendants." If and where analytically relevant, we will clarify which specific parties were involved in an action; however, for ease of reading and in acknowledgement of the fact that most of the forthcoming discussion pertains to the contents of the documents themselves, we will ordinarily refer to either group as "Defendants" throughout this opinion.

analytically identical reasons, the trial court did not err in granting Plaintiffs' motion to stay trial proceedings. The trial court, however, incorrectly granted summary judgment where there remained unresolved issues of material fact pertaining to Defendants' declaratory judgment claim.

## I. Factual and Procedural Background

This appeal arises from an agreement in which Defendants placed a payment with Plaintiff CMD, the operator of automobile dealerships specializing in exotic vehicles, to secure one of a limited number of available slots as purchasers for the sale of a luxury vehicle, the Koenigsegg Gemera.

Plaintiffs filed their complaint on 21 December 2022 alleging that, in March of 2020, Defendants Graeme M. Keith, Jr. and William M. Oliver—Graeme on behalf of Defendant K.O. Cars, LLC—acquired "Gemera allocations" from CMD, LLC when both paid a "non-refundable Reserve Fee in the amount of $170,000.00" to ensure that they would receive one of the "approximately 300 units worldwide" of the Gemera that Koenigsegg intended to produce. The Complaint further alleged that, due to a breakdown in communication between Defendant Christian Keith and Plaintiff Ryan Wildrick—a representative of CMD, LLC—Christian approached Graeme and William and convinced both to cease business with Plaintiffs. To that end, Graeme and William both demanded the return of their respective $170,000.00 Gemera allocation payments. According to the Complaint, when Plaintiffs refused to return the $340,000.00 on the basis that the amount was non-refundable, Defendants

threatened a number of retaliatory actions, including "institut[ing] a baseless administrative enforcement action with the North Carolina Division of Motor Vehicles[,]" "contact[ing] [CMD, LLC's] floor plan finance company in an effort to interfere with [its] financing and banking relationships[,]" and "contact[ing] Koenigsegg Automotive AB in an effort to interfere with [CMD, LLC's] relationship with one of its franchisors."

As a result of these alleged threats, the Complaint invoked several causes of action: (1) breach and anticipatory breach of contract, relating to a transaction financially unrelated to the Gemera allocation payments; (2) unjust enrichment, also relating to a transaction financially unrelated to the Gemera allocation payments; (3) tortious interference with contract, relating to the retaliatory activity that allegedly occurred after Plaintiffs failed to return the Gemera allocation payments; (4) unfair and deceptive trade practices pursuant to N.C.G.S. § 75-1.1 *et seq.*, relating to the retaliatory activity allegedly designed, in part, to extort Plaintiffs to refund the Gemera allocation payments; and (5) civil conspiracy, also relating to the retaliatory activity allegedly designed, in part, to extort Plaintiffs to refund the Gemera allocation payments.

In response, on 27 March 2023, Defendants filed a Counterclaim and Third-Party Complaint factually alleging, in relevant part, both the truthfulness of the basis for the allegedly retaliatory statements according to the Complaint and a number of bad faith acts by Plaintiffs in their dealings with Defendants. The Counterclaim and

Third-Party Complaint invoked the following causes of action: (1) conversion, relating to the funds constituting the Gemera allocation payments; (2) unjust enrichment, relating to, in relevant part, the funds constituting the Gemera allocation payments; and (3) unfair and deceptive trade practices pursuant to N.C.G.S. § 75-1.1 *et seq.*, relating to, in relevant part, the acts forming the basis for the alleged retaliatory statements.

Plaintiffs and Defendants both moved for summary judgment. While the motions for summary judgment were pending, Defendants learned that the Gemera's intended design specifications had changed and amended the Counterclaim and Third-Party Complaint to include a claim for declaratory judgment pursuant to N.C.G.S. § 1-253 *et seq.*, that "(i) [Defendants] are entitled to rescission of the intended Gemera transactions; (ii) the Gemera deposits are refundable; and (iii) CMD is obligated to refund [the Gemera] deposits in full." In support of this new claim, Defendants filed a Supplemental Motion for Summary Judgment alleging, in relevant part, that

> [t]he evidence shows that the Gemera deposits were and are refundable, and that CMD/Wildrick should have refunded them. Specifically, but not exclusively, the evidence shows that, subsequent to K.O. Cars and [William] remitting their deposits, Koenigsegg materially changed the vehicle's price and specifications, and that Koenigsegg confirmed the deposits are refundable at least for that reason.

Alongside this Supplemental Motion for Summary Judgment, Defendants included affidavits from Graeme and William attesting to the scope of the alleged changes in the Gemera's price and specifications. They also amended their answers to Plaintiffs' Complaint to include the affirmative defenses of "impossibility, impracticability, frustration of purpose, and/or mutual mistake" with respect to the Gemera allocation payments.

Finally, Defendants filed a memorandum in support of their motion for summary judgment alleging, in relevant part, that changes impacting the price of the Gemera had been made to its design:

> In or around March 2020, CMD informed K.O. Cars that it had an opportunity to acquire two extremely limited production Koenigsegg Gemera . . . vehicles. In October 2020, [William] paid CMD $170,000[.00] to secure his purchase of one Gemera. In February 2021, K.O. cars also paid CMD $170,000[.00] to secure the purchase of a second Gemera. CMD and Wildrick informed K.O. Cars that the vehicles would take approximately 15 months to build and would be delivered in late 2022. In reality, the Gemeras have still not been delivered. In September 2022, after it became clear that the Gemeras would be significantly delayed[,] [] [William] and K.O. Cars each cancelled their respective Gemera arrangements and demanded return of their $170,000[.00] deposits. CMD and Wildrick have repeatedly refused to refund [William] and K.O. Cars' deposits despite their failure to deliver the Gemeras.
>
> In or around July 2024, K.O. Cars, Graeme Keith, and [William] learned that it was impossible for them to purchase the Koenigsegg Gemeras as contracted for with CMD, because Koenigsegg decided to materially change both the vehicle's engine and purchase price. When K.O. Cars and [William] contracted with CMD, Koenigsegg had

slated the Gemera to include Koenigsegg's Tiny Friendly Giant engine (a twin-turbocharged 2.0-liter three-cylinder engine), along with three electric motors, for a combined approximate 1,700 horsepower and 2,581 pond-feet of torque. Now, Koenigsegg is only going to manufacture the Gemera using its Hot V8 engine (a 5.0-liter twin-turbo V8 engine), along with Koenigsegg's Dark Matter E-motor, for a combined approximate 2,300 horsepower and 2,028 pound-feet of torque. With this change, the Gemera's base price increased from $1,700,000.00 to $2,600,000.00.

. . . .

On August 8, 2024—immediately upon learning about the Gemera's material changes—[Defendants] moved to amend their pleadings to add additional affirmative defenses and a declaratory judgment claim related to such changes. By order, the court allowed that motion. On September 16, 2024, [Defendants] filed their respective amended pleadings, adding affirmative defenses of rescission, impossibility, impracticability, frustration of purpose, and/or mutual mistake, along with a declaratory judgment claim. On December 3, 2024, CMD and Wildrick filed their Answer/Reply to [Defendants'] Amended Counterclaims and Third-Party Complaint.

. . . .

As described above, K.O. Cars, [William], and CMD are not able to consummate the intended Gemera transactions because Koenigsegg has materially and significantly changed the Gemera, including at least related to its purchase price and engine. K.O. Cars and [William] are thus entitled to rescission[] thereof via their declaratory judgment claim and/or affirmative defenses of impossibility, impracticability, frustration of purpose, and/or mutual mistake—each of which are independently sufficient to merit granting [Defendants'] [m]otion.

CMD's tortious interference, Chapter 75, and civil conspiracy claims all rely on the validity of the Gemera

- 7 -

> transactions and purported non-refundability of the Gemera deposits. [Defendants'] aforementioned affirmative defenses entitle them to summary judgment on each of CMD's claims relating to the Gemeras. [Defendants'] declaratory judgment claim also entitles K.O. Cars and [William] to rescission of the Gemera transactions and return of the deposits.

(Internal citations omitted.) Defendants concluded their argument by asserting that, "[s]ince the contracted-for Gemera will not be produced, and instead a vehicle with a different engine costing a substantial premium will take its place, the contract's subject matter has . . . been destroyed . . . thereby resulting in rescission based on impossibility of performance" (quotation marks and internal citations omitted); that they "could not have protected themselves against such unexpected and extreme contingencies[,]" frustrating the contract's purpose; and that a mutual mistake had occurred because, "when the parties entered the Gemera contracts, they believed Koenigsegg would manufacture and sell the Gemeras as contracted-for, with a specific engine for a specific price."

The trial court held a hearing on the motion. At the time of the hearing, the evidence before the trial court included the affidavits of Graeme and William, which stated, in relevant part, that the parties had placed the allocation payments as a ten percent "deposit" on the base price of a Koenigsegg Gemera; that the Gemera's production had encountered significant delays; and that the specifications and base price for the Gemera had changed significantly since the allocation payments were placed. Both affidavits also remarked that Koenigsegg's position as the manufacturer

was that "any customer who previously remitted a Gemera deposit could cancel their Gemera purchase and receive a full refund of their deposit." Both parties' counsel repeatedly referred to the allocation payments as "deposits" throughout the hearing.

The record at the time also contained the invoices for the Gemera allocation payments for both K.O. Cars, LLC—signed by Graeme—and William. Both invoices described the payment as a "non-refundable [r]eserve fee" for an "[i]tem" described as "Koenigsegg Gemera – Base MSRP $1,700,000.00[,]" and the K.O. Cars transaction was documented with a second invoice describing the payment as a "[n]on[-]refundable down payment for a KG12 vehicle excluding options[,]" "KG12 Base vehicle 1 pcs 1700000 USD[.]" There was no written contract, however. The hearing culminated with the trial court ruling on the motion, granting summary judgment with respect to the declaratory judgment claim on theories of impossibility and frustration of purpose and denying the motion as to all other claims.

On 27 December 2024, the trial court reduced its ruling to a written order, reasoning that there were no material disputes of fact as to the status of the Gemera allocation payments and that the case was resolvable as a matter of law as to the declaratory judgment claim:

> 1. There are no issues of material fact regarding K.O. Cars' and [William]'s Counterclaim/Third-Party Claim for a Declaratory Judgment related to the Koenigsegg Gemera transactions between CMD and K.O. Cars and between CMD and [William]. K.O. Cars and [William] are therefore entitled to judgment as a matter of law on the Amended

Counterclaim/Third-Party Claim for Declaratory Judgment.

2. Except as stated above, genuine issues of material fact remain in dispute such that [Defendant]s' Motion should otherwise be denied.

WHEREFORE, it is hereby ORDERED, ADJUDGED, AND DECREED as follows:

1. [Defendant]s' Supplemental Motion for Summary Judgment is GRANTED as to the Declaratory Judgment claim asserted by K.O. Cars and [William].

2. [Defendant]s' Supplemental Motion for Summary Judgment is otherwise DENIED.

Plaintiffs appealed; shortly thereafter, they moved for the trial court to stay proceedings pending resolution of the appeal "pursuant to N.C.G.S. § 1-294[.]" The trial court granted the motion, ruling that the appeal from the summary judgment order carried the risk of inconsistent verdicts if the trial court were to proceed on the remaining claims:

> 1. By Order signed December 24, 2024 and entered December 27, 2024, the Honorable Judge Louis A. Torsch granted in part and denied in part Defendants' Supplemental Motion for Summary Judgment, which granted judgment as matter of law on [Defendant]s' request for declaratory relief and found that genuine issues of material fact remained on all other claims, counterclaims and third-party claims asserted by the Parties ("Order").
>
> 2. The remaining claims, counterclaims and third-party claims among the Parties were set for trial during the January 13, 2025 Civil Session of the Mecklenburg County Superior Court.

3. On January 6, 2025, [Plaintiff]s timely filed their Notice of Appeal of the Order in the North Carolina Court of Appeal[s].

4. On January 10, 2025, [Plaintiff]s filed their Motion to Stay pursuant to N.C.G.S. [§] 1-294 based on the risk of inconsistent verdicts should the case proceed to trial during the pendency of [Plaintiff]s' appeal of the Order.

5. [Plaintiff]s contend that substantial right would potentially be impaired in the absence of an immediate appeal of the Order, because the Order and [Plaintiff]s' appeal of the Order are factually and legally intertwined with the remaining claims, counterclaims, and third-party claims between the Parties, such that proceeding to trial on the remaining issues could result in verdicts inconsistent with the Order itself.

6. Given the nexus between the Order and the factual and legal issues in the Parties' remaining claims, counterclaims, and third-party claims, the Court finds that there is at least some risk of an inconsistent verdict if the trial proceeds during the pendency of [Plaintiff]s' appeal, which would potentially impair substantial right of the [Plaintiffs] absent an immediate appeal of the Order.

7. As a result, the Court FINDS and CONCLUDES that an immediate stay of proceedings in the trial court is necessary and that an immediate appeal of the Order is proper.

Defendants appealed from the trial court's order granting Plaintiffs' motion to stay.

Pending resolution of the motion to stay before the trial court, Plaintiffs filed a motion pursuant to Rule 60 for relief from the order partially granting summary judgment and a second motion for the reconsideration of, and relief from, the same.

The trial court denied the motions. Plaintiffs did not notice appeal from the order denying these motions.

## II. <u>Jurisdiction</u>

When a judgment is a final judgment within the meaning of N.C.G.S. § 7A-27(b), this Court has jurisdiction to review the appeal. Here, however, both appealed orders are interlocutory. *See Harbin Yinhai Tech. Dev. Co. v. Greentree Fin. Grp., Inc.*, 196 N.C. App. 615, 619 (2009) ("An interlocutory order is one made during the pendency of an action which does not dispose of the case, but leaves it for further action by the trial court in order to settle and determine the entire controversy." (citation and internal quotation marks omitted)). "Ordinarily, an appeal from an interlocutory order will be dismissed as fragmentary and premature unless the order affects some substantial right and will work injury to [the] appellant if not corrected before appeal from final judgment." *Stanback v. Stanback,* 287 N.C. 448, 453 (1975); *see also* N.C.G.S. § 1-277(a) (2023).

Appellants bear the burden of establishing that an interlocutory order affects a substantial right. *Jeffreys v. Raleigh Oaks Joint Venture*, 115 N.C. App. 377, 379 (1994); *see also* N.C. R. App. P. 28(b)(4) (2025). Moreover, "[n]o hard and fast rules exist for determining which appeals affect a substantial right[,]" *Estrada v. Jaques*, 70 N.C. App. 627, 640 (1984); rather, "[w]hether an interlocutory appeal affects a substantial right is determined on a case by case basis." *McConnell v. McConnell*, 151 N.C. App. 622, 625 (2002). Thus, we must first determine whether Plaintiffs and

Defendants have established that the orders they appealed from affect a substantial right.

Plaintiffs argue that appeal is proper from the trial court's order partially granting summary judgment in this case because, in the event the jury were to base its decision on the validity of Plaintiffs having kept the Gemera allocation payments, the order creates the risk of inconsistent jury verdicts. They base this argument on *Green v. Duke Power Co.*, a case in which our Supreme Court held that, although the risk of causing a second trial is not itself a reason to allow immediate appeal from an interlocutory order, such a risk can affect a substantial right if—and only if—doing so "create[es] the possibility that a party will be prejudiced by different juries in separate trials rendering inconsistent verdicts on the same factual issue." *Green v. Duke Power Co.*, 305 N.C. 603, 608 (1982). As a doctrinal statement, therefore, the standard is clear: if a material factual issue could be decided differently in a hypothetical post-appeal trial than in the instant trial as the result of a status quo change on appeal, then the possibility of a second trial affects a substantial right because the factfinding may differ between the two trials. *See id.*

Here, the inconsistent verdicts doctrine straightforwardly applies. In the event that Plaintiffs were required to wait until after a final judgment to appeal the trial court's order granting summary judgment, the jury may have already rendered its ruling as to the other claims while accepting one version of the facts as true. In the event we were to reverse the trial court's summary judgment order on the basis that

there remained a disputed issue of material fact as to the declaratory judgment claim, a subsequent jury would be at liberty to accept a different, mutually exclusive factual narrative as true in a second trial, creating verdicts factually inconsistent with that of the jury in the current trial. *See* N.C.G.S. § 1-261 (2023) ("When a proceeding [for declaratory judgment] involves the determination of an issue of fact, such issue may be determined in the same manner as issues of fact are tried and determined in other civil actions in the court in which the proceeding is pending."); N.C.G.S. § 1A-1, Rule 57 (2023) ("The procedure for obtaining a declaratory judgment . . . shall be in accordance with these rules, and the right to trial by jury may be demanded . . . ."). For example, given the lack of any written contract in the Record, if the jury in this case accepted that the agreements between the parties concerning the Gemera allocations contemplated a vehicle with particular specifications, and we reversed as to the declaratory judgment issue, a subsequent jury may be at liberty to believe the agreement contemplated a nonspecific vehicle or a vehicle with different specifications, creating variance as to a material fact. For this reason, appeal is proper from the trial court's interlocutory order.[3]

---

[3] To the extent appellate jurisdiction from this interlocutory order could be argued not to exist, we would nonetheless elect to treat Plaintiffs' appeal as a petition for writ of certiorari and allow certiorari. *N.C. Cent. Univ. v. Taylor*, 122 N.C. App. 609, 610 (1996) ("[I]n our discretion, we treat the purported appeals of the parties as petitions for certiorari which are allowed . . . [and] address the parties' issues in order to expedite a decision in this case and to promote judicial economy." (citations omitted)). Similarly, while we do not specifically address the order staying proceedings elsewhere in this section, for the reasons discussed below, Defendants' appeal from the trial court's order granting Plaintiffs' motion to stay is resolvable coextensively with the issue of jurisdiction; therefore, for reasons of judicial economy, we resolve that issue on the merits. *Id.*

Plaintiffs also attempt to make arguments on appeal concerning the order denying their motions for the reconsideration of, and relief from, the trial court's order partially granting summary judgment. As no notice of appeal from these orders appears in the Record, we are without jurisdiction to evaluate these arguments. *Booth v. Utica Mut. Ins. Co.*, 308 N.C. 187, 189 (1983) ("Failure to give timely notice of appeal . . . is jurisdictional, and an untimely attempt to appeal must be dismissed."). This portion of Plaintiffs' appeal is therefore dismissed for want of jurisdiction.[4]

### III. Standard of Review

> "The standard of review for summary judgment is de novo." *Forbis v. Neal*, 361 N.C. 519, 524[] . . . (2007). Summary judgment is appropriate when no genuine issue of material fact exists, and a party is entitled to judgment as a matter of law. *Variety Wholesalers, Inc. v. Salem Logistics Traffic Servs., LLC*, 365 N.C. 520, 523[] . . . (2012) (citing N.C.G.S. § 1A-1, Rule 56(c)). Rule 56(c) of the North Carolina Rules of Civil Procedure states that summary judgment is only appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file . . . show that there is no genuine issue as to any material fact and that any party is entitled to judgment as a matter of law." N.C.G.S. § 1A-1, Rule 56(c) (2021). "A 'genuine issue' is one that can be maintained by substantial evidence." *Dobson v. Harris*, 352 N.C. 77, 83[] . . . (2000). In review of the motion for summary judgment, the Court must view the evidence in the light most favorable to the non-moving party. *Id.*

*Value Health Sols., Inc. v. Pharm. Rsch. Assocs., Inc.*, 385 N.C. 250, 267 (2023).

### IV. Analysis

---

[4] Moreover, given the basic nature of this jurisdictional defect, we do not elect to review this issue via certiorari.

On appeal, Plaintiffs argue the trial court erred in granting Defendants' motion for summary judgment in part. Meanwhile, Defendants, in their capacity as cross-appellants, argue only that the trial court erred in granting Plaintiffs' motion to stay proceedings at trial pending appeal. Because Defendants' arguments pertaining to the stay of trial proceedings are entirely coextensive with the already-resolved issue of whether the interlocutory order partially granting summary judgment was properly appealed, however, we hold the stay of trial proceedings was proper and devote no more discussion to this issue; our previous application of the inconsistent verdicts doctrine adequately explains why the trial court's motion to stay was proper. Thus, we devote the remainder of this analysis to the order partially granting summary judgment.

"'[S]ummary judgment may be appropriate in a declaratory judgment action[] under the same rules applicable in other actions.'" *Geitner v. Mullins*, 182 N.C. App. 585, 589 (2007) (quoting *Floyd v. Integon Gen. Ins. Corp.,* 152 N.C. App. 445, 448 (2002)). "Summary judgment is appropriate when no genuine issue of material fact exists, and a party is entitled to judgment as a matter of law." *Value Health*, 385 N.C. at 267 (citation omitted). Summary judgment is warranted "if the pleadings, depositions, answers to interrogatories, and admissions on file show that there is no genuine issue as to any material fact and that any party is entitled to judgment as a matter of law." *Id.* (citation modified). "A genuine issue is one that can be maintained by substantial evidence. In review of the motion for summary judgment, the Court

must view the evidence in the light most favorable to the non-moving party"—here, Plaintiffs. *Id.* (citation modified).

"The purpose of the Declaratory Judgment Act is[] to settle and afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations." *Nationwide Mut. Ins. Co. v. Roberts,* 261 N.C. 285, 287 (1964) (citation and internal quotation marks omitted). "While the Declaratory Judgment Act should be liberally construed[,] the Act applies 'only when the pleadings and evidence disclose the existence of a genuine controversy between the parties to the action, arising out of conflicting contentions as to their respective legal rights and liabilities" involving a legal instrument, including a contract. *Integon Nat. Ins. Co. v. Helping Hands Specialized Transp., Inc.*, 233 N.C. App. 652, 658 (2014) (quoting *Roberts,* 261 N.C. at 287). While a contract need not be in writing for declaratory judgment to be appropriate, it remains the case that outstanding issues of fact governing the nature of the agreement are for the trier of fact to determine. *See Penley v. Penley*, 314 N.C. 1, 25 (1985) ("[W]ritten agreements[] . . . should not be a requirement where, pursuant to [N.C.G.S. §] 1-256, 'a judgment or decree will terminate the controversy or remove an uncertainty.' Factual questions, pursuant to [N.C.G.S. §] 1-261, can be determined by a jury and questions of law determined by the court." (quoting N.C.G.S. § 1-256)).

Here, there is no exact record of any agreement, written or otherwise, between the parties. There were, however, invoices for the Gemera allocations—one in the name of K.O. Cars, LLC, signed by Graeme, and another in the name of William. Both

invoices described the "[i]tem" for which the invoice was issued as "Koenigsegg Gemera – Base MSRP $1,700,000.00[.]" The invoice, however, is not itself a contract and does not purport to be.

From the fact that the trial court partially granted summary judgment despite the Record's silence as to the nature of the bargain itself, we surmise the trial court believed that, regardless of the exact terms of the agreement, the facts in this case established that the doctrines of impossibility, frustration of purpose, or mutual mistake applied. We disagree. Regarding the doctrine of impossibility, we have said that

> nonperformance may be excused for impossibility if the performing party's performance is rendered impossible by the law, provided the promisor is not at fault and has not assumed the risk of performing whether impossible or not. Moreover, in most cases it must be shown that the event was not reasonably foreseeable.

*Botts v. Tibbens*, 232 N.C. App. 537, 540 (2014) (citation omitted). Meanwhile, a contract's purpose has been frustrated if,

> [while] performance remains possible, . . . a fortuitous event supervenes to cause a failure of the consideration or a practically total destruction of the expected value of the performance. The doctrine of commercial frustration is based upon the fundamental premise of giving relief in a situation where the parties could not reasonably have protected themselves by the terms of the contract against contingencies which later arose.

*Brenner v. Little Red School House, Ltd.,* 302 N.C. 207, 211 (1981). Finally, "[a] mutual mistake is one common to both parties to a contract wherein each labors

under the same misconception respecting a material fact, the terms of the agreement, or the provisions of the written instrument designed to embody such agreement." *Branch Banking & Tr. Co. v. Chicago Title Ins. Co.*, 214 N.C. App. 459, 463 (2011) (citation and internal marks omitted).

Plaintiffs argue, and we agree, that, to the extent the trial court believed any of these doctrines would have applied irrespective of more specific details about the contract itself, that belief reflects a misapprehension of a pre-order system like the one in this case. The doctrines of impossibility, frustration of purpose, and mutual mistake all presuppose bargains in which the agreement has a specific end contemplated by the parties that—respectively—either cannot be brought about, *Botts*, 232 N.C. App. at 540; can only be brought about under conditions of extreme, unforeseen difficulty, *see Brenner,* 302 N.C. at 211; or was the product of a misapprehension by both parties, *see Branch Banking*, 214 N.C. App. at 463. In some pre-order systems, no such specific ends are contemplated; rather, the nature of the bargain is to reserve, at a time when both parties understand the product's design specifications are indeterminate, the right to purchase that product when the design is finalized and the item becomes available. In light of the trial court's ruling, we suspect it may have inadvertently ignored that transactions of this type may be customary in many industries and would not ordinarily be rendered invalid by the doctrines of impossibility, frustration of purpose, and mutual mistake simply because the design of the item reserved was indeterminate.

Nonetheless, since there are genuine issues of fact about the details of the agreement itself in this case, we are unable to say whether the allocations purchased by K.O. Cars, LLC and William were being purchased for *some* Gemera or for a Gemera within a fixed spectrum of specification possibilities. In particular, we note that the invoice indicated the allocation payments had been made for the "Koenigsegg Gemera – *Base MSRP $1,700,000.00*[.]" (Emphasis added.) Since the parties allege different facts about the terms of the agreement itself, summary judgment is not appropriate. Depending on the interpretation of the evidence, the allocation payments may have either been intended by the parties to reserve the Gemera *regardless* of final specifications—an agreement which would not have been made impossible, frustrated, or subject to a mutual mistake at the time of trial—or to reserve a Gemera *at a base price of $1,700,000.00*—a price the Record reflects did not exist for the Gemera at the time of the partial summary judgment order and therefore may have been subject to the doctrine of impossibility.

On the other hand, the consistent reference to the payment by both parties as a "deposit" at the summary judgment hearing, as well as the reference in one of the invoices to a "down payment," may have indicated a different type of agreement, as a "deposit" generally connotes a sum of money paid in advance to secure a specific item contemplated at the time the deposit is made, not the right to purchase a nonspecific item in the future. *See* DEPOSIT, Black's Law Dictionary (12th ed. 2024) ("Money placed with a person as earnest money or security for the performance of a contract.

[] The money will be forfeited if the depositor fails to perform."); *see also* EARNEST MONEY, Black's Law Dictionary (12th ed. 2024) ("A deposit paid . . . by a prospective buyer . . . to show a good-faith intention to complete the transaction, and ordinarily forfeited if the buyer defaults."), SECURITY, Black's Law Dictionary (12th ed. 2024) ("Collateral given or pledged to guarantee the fulfillment of an obligation[.]"). If, as a factual matter, the nature of the transition had been consistent with a deposit, then the doctrine of impossibility may apply, as the item contemplated would have no longer been in production. Given the conflicting characterization of the transaction within the evidence and the references made by the parties themselves, however, the material facts surrounding the nature of the allocation payment were not so fixed that Defendants were entitled to declaratory judgment as a matter of law. *See Penley*, 314 N.C. at 25. Accordingly, we hold summary judgment was improper, as genuine issues of material fact as to the nature of the contract were outstanding.

On remand, it remains for the trier of fact to determine what the agreement between the parties contemplated. If the agreement contemplated only the reservation of the right to purchase *some* Gemera, the doctrines of impossibility, frustration of purpose, and mutual mistake would not apply. Conversely, if the parties agreed to the reservation of a Gemera subject to some particular specifications that can no longer exist in the Gemera's design, the doctrine of impossibility may apply, excusing performance under the contract and entitling K.O. Cars, LLC and William to the rescission of their allocation payments.

## IV. **Conclusion**

Plaintiffs' appeal from the trial court's interlocutory order partially granting summary judgment was proper, and, as we review the summary judgment order, we elect to review Defendants' appeal from the order granting Plaintiffs' motion to stay as well. The order denying Plaintiffs' motions to reconsider and for relief from judgment, however, lacked any corresponding notice of appeal, and this purported appeal is therefore dismissed.

As Defendants' appeal from the trial court's order staying trial proceedings was coextensive with the issue of appellate jurisdiction, we affirm the trial court's order granting Plaintiffs' motion to stay. As to the order partially granting summary judgment, there was a genuine issue of material fact as to the nature of the agreement between the parties; therefore, summary judgment as to the issue of declaratory relief was improper.

AFFIRMED IN PART; REVERSED AND REMANDED IN PART; DISMISSED IN PART.

Judges STROUD and GORE concur.

Report per Rule 30(e).